**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jorge Ramos GONZALEZ, Defendant–Appellant.**

No. 96–2899.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1997.

Decided May 6, 1997.

Barry Rand Elden, Chief of Appeals, Virginia Kendall (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Andrea E. Gambino (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Jorge Ramos Gonzalez pled guilty to reentering the United States after previously having been deported in violation of 8 U.S.C. § 1326. The relevant section of the Sentencing Guidelines, § 2L1.2(b)(2), provides for a sentencing increase if a defendant committed an aggravated felony before his previous deportation. This case presents the question of whether an aggravated felony can ever be too old to count for purposes of this enhancement. The district court thought not, and enhanced Ramos Gonzalez's base offense level by 16 points, despite the fact that the underlying aggravated felony was over 15–years old. Ramos Gonzalez now appeals his sentence, arguing that any aggravated felony over 15–years old is too old to be counted. He also argues that, if he must receive the 16–point enhancement, he should have received a downward departure. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm.

## I.

Jorge Ramos Gonzalez has lived in this country most of his life, much of the time as an illegal alien. He first came to the United States from Mexico with his family when he was a child. Since then, he has been deported, and returned, three times. His first deportation was in 1975, following an arrest and conviction for drug distribution in Cook County, Illinois. After Ramos Gonzalez re-

turned the first time, he was convicted in May of 1980 in the Northern District of Illinois for unlawfully dealing in firearms and ammunition. He was subsequently convicted two more times in Cook County, Illinois: first, in 1981, for unlawful use of a weapon, and second, in 1982, for dealing in firearms and ammunition. In 1984, Ramos Gonzalez was deported for the second time. Proving that history repeats itself, Ramos Gonzalez once again returned to the United States, and he once again was deported in 1989.

In August 1995, Chicago, Illinois police discovered Ramos Gonzalez back in the United States when he was arrested for possession of heroin with intent to distribute. The superseding indictment that followed charged Ramos Gonzalez in Count II with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Count I charged him with violating 8 U.S.C. § 1326, illegally reentering the United States after previously having been arrested and deported. Pursuant to a plea agreement with the government, Ramos Gonzalez was convicted of both charges.

According to the Sentencing Guidelines, reentering the United States after deportation carries a base offense level of 8. U.S.S.G. § 2L1.2(a). However, the guidelines also provide a 16–level enhancement if the defendant was deported after having been convicted of an aggravated felony. U.S.S.G. § 2L1.2(b)(2). Under the terms of the plea agreement, Ramos Gonzalez's base offense level was to be increased 16 levels based on a May 1980 aggravated felony conviction for unlawfully dealing in firearms and ammunition.[1] The presentence report ("PSR") also recommended that Ramos Gonzalez receive the aggravated felony enhancement. Ramos Gonzalez objected to this recommendation, however, and argued at sentencing that the 1980 aggravated felony conviction should not form the basis for an aggravated felony enhancement. According to Ramos Gonzalez, convictions over 15–years old cannot be considered for purposes of § 2L1.2(b). The district court rejected this argument and added the 16 points to Ramos Gonzalez's offense level. The court held that the plea agreement's stipulation that Ramos Gonzalez would receive the 16–level enhancement precluded Ramos Gonzalez from arguing to the contrary. The court also rejected Ramos Gonzalez's argument that only aggravated felonies less than 15–years old could be considered for purposes of the enhancement.

Once his sentence was enhanced, Ramos Gonzalez argued that the court should depart downward from the sentencing range imposed by the guidelines. According to Ramos Gonzalez, a downward departure was appropriate under § 5K2.0 because a 16–level enhancement overrepresents the seriousness of his offense given the age of the aggravated felony conviction. The court refused to depart downward. It also refused to depart upward, however, as recommended in the PSR. In the end, the court sentenced Ramos Gonzalez to 63 months in prison, the high end of the guideline sentencing range.

Ramos Gonzalez now appeals his sentence. He argues first that the court erred by enhancing his sentence by 16 levels because the aggravated felony on which that enhancement was based was over 15–years old. He also argues that the court erred by denying his motion for a downward departure.

## II.

■ Before we may address the propriety of the aggravated felony enhancement, we must determine whether the plea agreement precludes Ramos Gonzalez from challenging it. The government argues that Ramos Gonzalez is bound because the plea agreement stipulates that the 16–level enhancement applies. The district court agreed with the government and held that the plea agreement precluded Ramos Gonzalez from arguing against the enhancement. We review the district court's interpretation of a plea agreement for clear error. *United States v. Lovell*, 81 F.3d 58, 61 (7th Cir.1996).

---

**1.** On May 23, 1980, Ramos Gonzalez was convicted of violating 18 U.S.C. § 922(a)(1), 18 U.S.C. § 1202(a)(1), and 26 U.S.C. § 5861(d) and (e). *See* U.S.S.G § 2L1.2, comment. (n.7) (defin-ing an "aggravated felony" as including illicit trafficking in firearms as defined in 18 U.S.C. § 921); 18 U.S.C. § 1101(a)(43)(C) (same).

█ Ramos Gonzalez counters that the plea agreement specifically allows him to argue that the application of the 16–level enhancement under § 2L1.2(b)(2) is erroneous. The plea agreement states:

> Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

(emphasis added). We agree with Ramos Gonzalez's interpretation of this provision. Interpreting the plea agreement as we would any other contract, *Lovell,* 81 F.3d at 61; *United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992), the plain language of this provision allows Ramos Gonzalez to argue that the plea agreement contains an erroneous interpretation of the guidelines. If, as Ramos Gonzalez maintains, the guidelines do not allow consideration of convictions over 15–years old for purposes of the 16–level enhancement, then application of the enhancement to Ramos Gonzalez based on his 1980 conviction would be error. The fact that no court has previously so held would not make the application of the aggravated felony enhancement any less of an error. The above-quoted paragraph very clearly states that the parties may correct such an error in interpretation of the guidelines "by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application." Ramos Gonzalez filed a written objection to the PSR and argued at the sentencing hearing that the guidelines did not permit the 16–level enhancement to be imposed based on an over 15–year old aggravated felony. Ramos Gonzalez was well within his rights under the plain language of this plea agreement to object at sentencing. Thus, the plea agreement does not preclude his appeal now that the district court has rejected his arguments.

## III.

█ We now turn to the merits of Ramos Gonzalez's claim that the court cannot consider felonies over 15–years old when applying the § 2L1.2(b)(2) enhancement for deportation after the commission of an aggravated felony. The district court rejected this argument and we review its interpretation of the Sentencing Guidelines *de novo. United States v. Munoz–Cerna,* 47 F.3d 207, 209 (7th Cir.1995).

Ramos Gonzalez was convicted under 8 U.S.C. § 1326 which makes it illegal for an alien who has previously been arrested and deported to return to the United States without obtaining the Attorney General's consent. Under this statute, if the offending alien was deported after a felony, he is subject to a maximum term of imprisonment of 10 years, but if he was deported after an aggravated felony, he is subject to a maximum term of imprisonment of 20 years. 8 U.S.C. § 1326(b). The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43), which lists a number of offenses and then states:

> The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

Section 2L1.2 of the Sentencing Guidelines establishes a base offense level of 8 for illegal reentry into the United States. U.S.S.G. § 2L1.2(a). Subsection (b) of § 2L1.2 delineates the applicable specific offense characteristics, increasing the offense level in line with the increased maximum sentences of 8 U.S.C. § 1326(b). Section 2L1.2(b) provides:

> (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.

> (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

Application Note 7 to § 2L1.2 defines an "aggravated felony" in terms that parallel the statutory definition, first listing a variety of offenses, then stating:

The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

Thus, § 2L1.2(b)(2) does not explicitly limit the 16–level enhancement to cases where the aggravated felony, if a domestic conviction, is less than 15–years old. The language of Application Note 7 clearly intends the explicit 15–year limit to refer only to convictions under foreign law.

Despite this plain language, Ramos Gonzalez argues that the Sentencing Commission intended the courts to read in a 15–year limit with regard to domestic aggravated felonies. First, Ramos Gonzalez contends that the § 2L1.2(b) enhancements "should be applied in accordance with the rules of Chapter Four of the guidelines, which define criminal history." Specifically, Ramos Gonzalez cites to the fact that § 4A1.2 excludes convictions over 15–years old for purposes of calculating criminal history categories [2] and argues that consistency demands the same limit in the context of § 2L1.2(b). Second, Ramos Gonzalez believes it would be absurd to include a 15–year limit for foreign but not domestic convictions.

The government argues that we decided this issue already in *United States v. Munoz–Cerna*, 47 F.3d 207, 211 n. 8 (7th Cir. 1995), which stated that the effective date of § 2L1.2(b)(2) "operates retrospectively and therefore brings within its ambit all prior aggravated felonies, no matter what the date of commission." This footnote in *Munoz–Cerna*, however, addressed whether felonies committed before the effective date of the 1991 amendment to § 2L1.2 could be considered in applying the § 2L1.2(b)(2) enhancement, an issue distinct from whether felonies

can ever be too old to consider relative to the date of the illegal reentry. *Id.* Munoz–Cerna, however, did cite approvingly *United States v. Maul–Valverde*, 10 F.3d 544 (8th Cir.1993), in which the Eighth Circuit rejected an argument similar to that made by Ramos Gonzalez. *Munoz–Cerna*, 47 F.3d at 211 n. 8.

In *Maul–Valverde*, the district court applied the § 2L1.2 (b)(2) aggravated felony enhancement and then departed downward, holding that the 16–level enhancement overrepresented the seriousness of the defendant's offense because the defendant committed the aggravated felony over 15 years prior to his illegal reentry. *Maul–Valverde*, 10 F.3d at 545–46. Both the district court and the Eighth Circuit took for granted that § 2L1.2(b)(2) "counts all prior aggravated felonies committed in the United States, no matter how ancient." *Id.* at 546. Despite the guideline's inclusion of all aggravated felonies, the district court reasoned that a downward departure was appropriate for older felonies because § 4A1.2 excludes convictions over 15–years old from the criminal history category calculation, and because Application Note 7 of § 2L1.2(b)(2) excludes foreign convictions over 15–years old from the definition of an aggravated felony, *id.* at 545–46; the same considerations Ramos Gonzalez points to in urging us to read a 15–year limit into § 2L1.2(b). The Eighth Circuit rejected this reasoning. It held:

> [T]he [Sentencing] Commission took its definition of an aggravated felony *directly from the governing statutes*, and its decision to place a time limit only on the foreign aggravated felonies to be counted is mirrored in those statutes. *See* the last sentence of 8 U.S.C. § 1101(a)(43). Because the Sentencing Commission expressly considered this factor in fashioning § 2L1.2(b), and because that Guideline is consistent with the controlling statutes, the

2. Section 4A1.2(e) states:

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defen-

dant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

district court erred in departing on this ground. A court may not depart because it considers a Guideline misguided.

*Id.* at 546 (emphasis in original). The *Maul–Valverde* court also rejected the idea that courts should import the limitations of the criminal history section into the determination of whether to apply the aggravated felony enhancement under § 2L1.2(b)(2). *Id.* at 546–47.

The Sentencing Commission's publication, *Most Frequently Asked Questions about the Sentencing Guidelines* ("MFAQ"), supports the Eighth Circuit's holding.[3] In response to the question,

> Do the specific offense characteristics for deportation after a conviction for a felony or aggravated felony under § 2L1.2 (Unlawfully Entering or Remaining in the United States) require that these convictions be "countable" under the provisions of Chapter Four, Part A (Criminal History)?

the Commission answered,

> No. The applicability of the specific offense characteristics (b)(1) and/or (b)(2) is not dependent on whether the felony or aggravated felony conviction resulted in a sentence countable under the criminal history provisions of Chapter Four.

United States Sentencing Commission, *Most Frequently Asked Questions About the Sentencing Guidelines* 14 (7th ed. 1994). Ramos Gonzalez's arguments fail to convince us that we should hold, contrary to these authorities, that § 2L1.2(b)(2) actually contains an implicit 15–year limit on the aggravated felonies that may be considered for purposes of the enhancement.

■ First, we reject Ramos Gonzalez's argument that because § 4A1.2 excludes consideration of convictions over 15–years old in the determination of a defendant's criminal history category, such convictions necessarily must be excluded when applying the aggravated felony enhancement under § 2L1.2(b)(2). Although both sections determine the impact of past crimes on a current sentence, *United States v. Cordova–Beraud,* 90 F.3d 215, 219 (7th Cir.1996), each section does so for a different reason. Thus, the 15–year limit on criminal history calculations does not signal an intent to similarly limit the aggravated felony enhancement under § 2L1.2(b)(2).[4] The aggravated felony enhancement is a specific offense characteristic used to determine the proper offense level for the crime of reentering the United States after deportation. As such, it is a measure of the seriousness of the crime committed, ratcheting up the sentence because it is a more serious offense to return after deportation when the defendant has previously committed a serious crime—an aggravated felony. In other words, we find it particularly troublesome to have illegal aliens returning who are not just illegal aliens, but also criminals. The criminal history category, however, serves the different purpose of evaluating the likelihood that any defendant will commit another crime in the future. It judges recidivism more generally. In sum, "[t]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States." *Maul–Valverde,* 10 F.3d at 547 (alteration in original) (quoting *United States v. Adeleke,* 968 F.2d 1159, 1161 (11th Cir.1992)). Given the different goals of these sections, we cannot assume, without more, that the Sentencing Commission intended the Chapter Four, Part A requirements to apply to § 2L1.2(b) in the face of its silence on the issue.

---

3. Although the MFAQ is neither binding nor the official position of the Sentencing Commission, *see, e.g., United States v. Keller,* 58 F.3d 884, 892 n. 2 (2d Cir.1995), we find its consistency with the Eighth Circuit's opinion to be persuasive.

4. We have looked to the criminal history section in the past to interpret § 2L1.2. In *Cordova–Beraud,* 90 F.3d 215, we looked to the criminal history section's definition of "sentence of imprisonment" to determine the meaning of "term of imprisonment imposed" as used in § 2L1.2. However, unlike the *Cordova–Beraud* court, we are not faced in the instant case with giving meaning to a term undefined in § 2L1.2. *See* U.S.S.G. § 2L1.2, comment. (n.7) (defining "aggravated felony"). Moreover, in *Cordova–Beraud,* 90 F.3d at 219–20, the language of § 2L1.2 supported application of the criminal history section's definition.

Ramos Gonzalez argues that, given this silence, we should strive to maintain internal consistency within the guidelines. He points to other guideline provisions—specifically § 4B1.1 (Career Offender), § 2K1.3 (Unlawful Receipt of Explosive Materials), and § 2K2.1 (Unlawful Receipt of Firearms or Ammunition)—that include the 15–year limit and contends that, to be consistent, we should apply this same limit to § 2L1.2(b). However, consistency does not require us to apply the criminal history section's 15–year limit to § 2L1.2(b) simply because other guideline provisions apply the requirements of Chapter Four, Part A. Rather, the Sentencing Commission's explicit application of these requirements in the above-cited sections shows that the Commission knew how to express when it intended those limitations to apply. The absence of such an express limitation on domestic convictions in § 2L1.2(b) is not an oversight, but an indication that the Commission did not intend there to be any such limitation.

The fact that § 4B1.4 (Armed Career Criminal) makes explicit that the 15–year limit does *not* apply to that section is not to the contrary. *See* U.S.S.G. § 4B1.4, comment. (n.1). The Sentencing Commission's explicit rejection of the 15–year limit in this section does not mean that the Commission intended to apply the 15–year limit in sections that say nothing about such a limit. Unlike § 2L1.2, § 4B1.4 is in the same chapter as the criminal history section. Moreover, § 4B1.4(c)(1) specifically utilizes the criminal history calculation of Chapter 4, Part A. Thus, clarity demanded that the Commission explicitly state that the time-period limitation did not apply when determining whether a defendant qualifies for application of § 4B1.4. The fact that the Commission was explicit in a section where explicitness was particularly necessary does not indicate that, unless explicitly rejected, the time limit always applies. No such considerations of clarity would naturally lead to the explicit rejection of this time limit in § 2L1.2(b).

■ We also agree with the Eighth Circuit that the exclusion of foreign felonies over 15–years old from the definition of an aggra-

vated felony signifies nothing with regard to an age limit on domestic felonies. *See Maul-Valverde,* 10 F.3d at 546. Application Note 7 to § 2L1.2 and 8 U.S.C. § 1101(a)(43) clearly spell out a 15–year limit only for convictions under foreign law. We can think of no reason why Congress or the Sentencing Commission would not spell out the same limitation for domestic convictions if they intended such a limitation to exist. Contrary to Ramos Gonzalez's argument, it is not in the least absurd that the Commission would treat foreign convictions differently from domestic convictions. It certainly does so with regard to the criminal history calculation, in which foreign convictions are not counted at all. U.S.S.G. § 4A1.2(h). One possible reason for this differential treatment is that many other countries do not provide the same, or similar, constitutional guarantees as the United States to render the convictions a reliable indicator of criminality. *See, e.g., United States v. Korno,* 986 F.2d 166 (7th Cir.1993) (affirming upward departure based on foreign convictions, although not normally included in criminal history calculation, because district court found Canadian justice system sufficiently close to the United States' system to make the convictions reliable). Moreover, when it comes to evaluating the seriousness of the crime of reentry after deportation, it is not irrational to consider older felonies committed in the United States to be more serious than older crimes committed in other countries in which the defendant may or may not have been an illegal alien. In sum, the Sentencing Guidelines impose no age limit on the domestic aggravated felonies that may be considered for purposes of applying the 16–point enhancement under § 2L1.2(b)(2).

## IV.

■ Last (and in this case, least), Ramos Gonzalez appeals the district court's refusal to depart downward on the ground that the 16–level enhancement overrepresents the seriousness of Ramos Gonzalez's crime. We have repeatedly explained that we do not have jurisdiction to review the district court's discretionary decision not to depart unless the district court based its decision on an

erroneous belief that it lacked the power to depart. *See, e.g., United States v. Cureton,* 89 F.3d 469, 474 (7th Cir.1996); *United States v. Helton,* 975 F.2d 430, 434 (7th Cir. 1992). Ramos Gonzalez argues that the district court refused to depart because it mistakenly believed it lacked authority to do so based on the age of the aggravated felony underlying the § 2L1.2(b)(2) enhancement. However, there is no indication in the sentencing transcript that the court thought it was without authority to depart on this ground. The mere absence of an explicit finding with regard to a specific ground for departure does not allow the inference that the court misunderstood the law or the extent of its discretion. *Cureton,* 89 F.3d at 474–75.

## V.

For the reasons stated above, the decision of the district court is AFFIRMED.