UNITED STATES of America, Appellee,

v.

Maurice Karl GITTEN, aka Maurice Gitten, aka Maurice Carl Gittens, aka Maurice Karl Gittens, aka Maurice K. Coittens, aka Robert Theodore Mitchell, aka Maurice K. Gittens, aka Maurice Gitto, Defendant–Appellant.

No. 00–1059.

United States Court of Appeals, Second Circuit.

Argued: Oct. 4, 2000

Decided: Nov. 1, 2000

---

Andrew J. Ceresney, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Evan T. Barr, Assistant United States Attorney, New York, New York, on the brief), for Appellee.

Benjamin E. Rosenberg, New York, New York (Swider Berlin Shereff Friedman, New York, New York, on the brief ), for Defendant-Appellant.

Before: KEARSE, CALABRESI, and SOTOMAYOR, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Maurice Karl Gitten appeals from a judgment entered in the United States District Court for the Southern District of New York following his plea of guilty before Denise Cote, *Judge*, convicting him of reentering the United States without the permission of the United States Attorney General, in violation of 8 U.S.C. § 1326 (Supp. III 1997), and principally sentencing him, as an alien who reentered illegally after having previously been deported following his conviction of an aggravated felony, to 77 months' imprisonment. On appeal, Gitten raises an *ex post facto* argument, contending that the dis-

trict court committed plain error in sentencing him under the 1998 version of the Sentencing Guidelines ("Guidelines"), rather than the 1995 version. He argues principally that, although some of his prior convictions were aggravated felonies under an expanded definition introduced by the 1998 version of the Guidelines, none of his prior convictions were aggravated felonies under the 1995 version. Finding no merit in his contentions, we affirm.

 In general, a defendant is to be sentenced under the version of the Guidelines that is in effect at the time of sentencing unless, in violation of the *Ex Post Facto* Clause, that version would require a punishment more onerous than would be required by the version in effect at the time the offense was committed. *See, e.g., United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990); *see generally Miller v. Florida*, 482 U.S. 423, 435–36, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). In the present case, Gitten, who did not timely object to the district court's application of the 1998 Guidelines, contends that application of the 1998 version constituted plain error. *See, e.g., United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (plain error is error that prejudicially affected the defendant's "substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings"). We conclude that there was no error here, much less plain error, because at least one of Gitten's prior convictions constituted an aggravated felony under the 1995 version of the Guidelines, and thus the 1998 version exposed him to no greater penalty than did the 1995 version.

For a defendant convicted of illegally reentering the United States in violation of 8 U.S.C. § 1326, the Guidelines require a 16–step increase in offense level if the reentry followed the defendant's deportation after conviction of an aggravated felony. *See* Guidelines § 2L1.2. The 1995 Guidelines, which were in effect during

Gitten's offense, defined "aggravated felony" to include

> any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years; or any attempt . . . to commit any such act. The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years. *See* 8 U.S.C. § 1101(a)(43).

1995 Guidelines § 2L1.2 Application Note 7 ("Application Note 7"). Section 16 of Title 18, referred to in this Application Note, defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (1994).

Gitten's criminal record prior to his 1992 deportation included New York State convictions for first-degree robbery in April 1977, for which he was sentenced to serve seven years' imprisonment, and second-degree robbery, also in April 1977, for which he was sentenced to a prison term of 10 years. Those prison terms ended when Gitten was released on parole in 1980. Gitten concedes that his 1977 state robbery convictions were for crimes of violence within the meaning of 18 U.S.C. § 16(a), as each offense, by definition, included an element of force. (*See* Gitten brief on appeal at 10 n.5 ("In 1977, robbery in the first degree and robbery in the second degree were defined in New York Penal Law §§ 160.15 and 160.10, respec-

tively, as 'forcibly steal[ing] property' in conjunction with certain other elements.").) He argues, however, that when he was sentenced in 1999, the robberies were not aggravated felonies within the meaning of § 2L1.2 because his imprisonment for those offenses ended upon his parole in 1980 and hence had not been "completed within the previous 15 years," 1995 Guidelines § 2L1.2 Application Note 7. We disagree with Gitten's interpretation of the scope of the 15–year limitation.

■ The wording of Application Note 7's antiquity limitation on the violent crimes that could be considered aggravated felonies in connection with § 2L1.2's 16–step offense-level enhancement indicated that only foreign, not domestic, offenses were subject to the 15–year limitation. As indicated above, the last sentence of Application Note 7 stated that

> [t]he term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

1995 Guidelines § 2L1.2 Application Note 7. If, as Gitten contends, the Sentencing Commission had meant the 15–year limitation to apply to federal and state offenses as well as to foreign offenses, the Note could have referred simply to a "violation of federal, state, or foreign law, for which the term of imprisonment was completed within the previous 15 years." Instead, the Commission distanced domestic offenses from foreign offenses by inserting the word "also" after "and" and by repeating the phrase "offenses described in the previous sentence." We regard the repetition and the presence of "also" as clear indicia that the 15–year limitation, mentioned only at the very end of the sentence, was meant to modify only the category of offenses that followed the repetition.

■ This interpretation is reinforced by Application Note 7's relationship to 8 U.S.C. § 1101(a)(43), to which the last sentence of the Note cites. Application Note 7 was introduced in 1991, see Guidelines App. C, amend. 375 (Nov. 1, 1991), following Congress's passage of the Immigration Act of 1990 ("Immigration Act" or "Act"), Pub.L. No. 101–649, 104 Stat. 4978 (1990). The Act amended § 1101(a)(43) of Title 8 by, *inter alia*, adding a paragraph that describes what types of offenses constitute aggravated felonies, and whose final sentence states that

> [t]he term ["aggravated felony"] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which ˙the term of imprisonment was completed within the previous 15 years.

8 U.S.C. § 1101(a)(43) (1994). Thus, this section's final sentence, which the final sentence of Application Note 7 parallels, uses a bifurcating format that separates domestic offenses from foreign offenses by repeating the phrase "applies to." Had Congress meant § 1101(a)(43)'s 15–year limitation to extend to federal and state offenses as well as to foreign offenses, it could more clearly have expressed that intent by omitting the phrase "and applies to such an offense in violation of" and using instead the single word "or." Since "[i]t is our duty to give effect, if possible, to every clause and word of a statute," *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted), we conclude that the repetition in the last sentence of § 1101(a)(43) is not superfluous and that Congress meant the 15–year limitation to apply only to foreign offenses.

This conclusion is further supported by the manner in which Congress added the temporally limiting language, for § 501(a) of the Immigration Act added the two parts of the final sentence of § 1101(a)(43) *seriatim*, spelling them out in different

subsections. The reference to domestic offenses was added by § 501(a)(5), which made no mention of any temporal limitation; the reference to foreign offenses, which alone included the 15–year limitation, was added by § 501(a)(6). The Act stated:

Paragraph (43) of section 101(a) (8 U.S.C. § 1101(a)) is amended—

. . . .

(5) by adding at the end the following: "Such term applies to offenses described in the previous sentence whether in violation of Federal or State law."; and

(6) by inserting before the period of the sentence added by paragraph (5) the following: "and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years."

Immigration Act of 1990, §§ 501(a)(5) and (6), Pub.L. No. 101–649, 104 Stat. 4978, 5048 (1990). Thus, the very manner in which Congress introduced the 15–year limitation makes plain Congress's intent that the limitation apply only to foreign offenses.

Given that Application Note 7 was adopted in the wake of Congress's amendment to § 1101(a)(43) and cited that section, and given that the language of the Note paralleled the bifurcation created by § 1101(a)(43) and on its face indicated that the 15–year limitation applied only to foreign offenses, we think it clear that the limitation did not extend to federal or state offenses.

We note that the other Circuits that have considered this question have also reached this conclusion. *See, e.g., United States v. Gonzalez–Mendez,* 150 F.3d 1058, 1060 (9th Cir.) ("The repetition of the verb 'applies' in the 'foreign law' clause makes it clear that this clause is meant to stand apart from the 'federal or state law' clause, and that the 15–year limitation modifies only the 'foreign law' clause. We presume that Congress used no superfluous words, . . . and therefore must make meaning of the multiple use of the word 'applies.' "), *cert. denied,* 525 U.S. 1010, 119 S.Ct. 528, 142 L.Ed.2d 439 (1998); *United States v. Gonzalez,* 112 F.3d 1325, 1329 (7th Cir.) ("The language of Application Note 7 clearly intends the explicit 15–year limit to refer only to convictions under foreign law."), *cert. denied,* 522 U.S. 962, 118 S.Ct. 396, 139 L.Ed.2d 309 (1997); *id.* at 1331 ("The exclusion of foreign felonies over 15–years old from the definition of an aggravated felony signifies nothing with regard to an age limit on domestic felonies."); *id.* ("Application Note 7 to § 2L1.2 and 8 U.S.C. § 1101(a)(43) clearly spell out a 15–year limit only for convictions under foreign law."); *id.* ("[W]hen it comes to evaluating the seriousness of the crime of reentry after deportation, it is not irrational to consider older felonies committed in the United States to be more serious than older crimes committed in other countries in which the defendant may or may not have been an illegal alien."); *United States v. Maul–Valverde,* 10 F.3d 544, 546 (8th Cir.1993) (" § 2L1.2(b)(2) counts all prior aggravated felonies committed in the United States, no matter how ancient").

■ Gitten urges us to apply the "rule of lenity" in order to conclude that the 15–year limitation extended to state convictions as well as foreign convictions. Assuming *arguendo* that the rule of lenity is applicable to the Guidelines, that principle has no application where the meaning of the provision at issue is clear. *See generally Salinas v. United States,* 522 U.S. 52, 66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (rule of lenity "does not apply when a statute is unambiguous or when invoked to engraft an illogical requirement to its text"); *United States v. Turkette,* 452 U.S. 576, 587 n. 10, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("rule of lenity" serves to aid the court in interpreting a criminal statute only if there is an ambiguity, and "comes into operation at the

end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers"). The rule of lenity is not applicable here, given our conclusion that Application Note 7 clearly did not extend the 15–year limitation to convictions for domestic offenses. *Accord United States v. Gonzalez–Mendez*, 150 F.3d at 1061.

Because Gitten's 1977 state robbery convictions constituted aggravated felonies within the meaning of both the 1998 and the 1995 Guidelines, application of the 1998 Guidelines did not violate Gitten's rights under the *Ex Post Facto* Clause.

The judgment of the district court is affirmed.