*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0076p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-1012

ROBERT LEE KING,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 05-00247—Robert Holmes Bell, Chief District Judge.

Argued: December 5, 2007

Decided and Filed: February 14, 2008

Before: GUY, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Sharon A. Turek, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Sharon A. Turek, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Raymond E. Beckering, III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. In a matter of first impression for this court, we are asked to determine whether a court can consider only offenses that took place within a limited time period when considering what offenses qualify as a "prior conviction[] for a similar offense," under 2006 U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(a)(1). Robert King ("King") pleaded guilty to the distribution of fentanyl[1] resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). When calculating King's base offense level, the district court

---

[1]Fentanyl is a prescription pain killer and is classified as a Schedule II narcotic. 21 U.S.C. § 812. According to the Drug Enforcement Administration, fentanyl has "an analgesic potency of about 80 times that of morphine," and "[t]he biological effects of . . . fentanyls are indistinguishable from those of heroin, with the exception that the fentanyls may be hundreds of times more potent." U.S. Drug Enforcement Administration, Fentanyl, http://www.usdoj.gov/dea/concern/fentanyl.html.

considered King's 1984 conviction for delivery of marijuana to be a "prior conviction[] for a similar offense," U.S.S.G. § 2D1.1(a)(1), which set King's base offense level at 43. On appeal, King claims that § 2D1.1 contains implicit time limits that restrict the convictions that can be used, making his 1984 conviction too old to count under § 2D1.1(a)(1). According to King, the district court should have instead set his base offense level at 38 under § 2D1.1(a)(2). Today, we hold that § 2D1.1(a)(1) does not contain any implicit time limitations; therefore, the district court did not err when it considered King's 1984 marijuana-delivery conviction. For the reasons explained below, we **AFFIRM** King's sentence.

## I. BACKGROUND

The factual basis of King's conviction is not in dispute and merits only a brief summary. King's indictment was based on King's fentanyl distribution leading to two deaths. On January 8, 2005, Emily Waskiewicz ("Waskiewicz") met King at the home of a mutual acquaintance, and there King provided Waskiewicz with methadone and fentanyl. The next morning Waskiewicz was dead. The cause of death was "from mixed drug toxicity of methadone and fentanyl." Joint Appendix ("J.A.") at 92 (Presentence Report ("PSR") ¶ 41). While the police were investigating Waskiewicz's death, King's fentanyl distribution again led to tragedy. On October 1, 2005, King gave fentanyl powder to Garry Sneller ("Sneller"). The next day, King discovered that Sneller had died from a drug overdose, and subsequent tests revealed a lethal level of fentanyl in Sneller's body.

On October 27, 2005, a grand jury indicted King for knowingly distributing methadone and fentanyl that resulted in the death of Waskiewicz, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On December 20, 2005, the grand jury delivered a superseding indictment that added a second count of distribution and possession with intent to distribute fentanyl, resulting in the death of Sneller, as well as a third count of conspiracy to possess with intent to distribute and distribute oxycodone. On June 27, 2006, the grand jury delivered a second superseding indictment splitting into two separate counts what had initially been the single count relating to Sneller's death. On August 14, 2006, the district court dismissed the Sneller-related count of possession with intent to distribute fentanyl that resulted in Sneller's death, leaving the Sneller-related count for distribution of fentanyl. Subsequently, King reached an agreement with the government, and on August 15, 2006, King pleaded guilty to the count of distribution of fentanyl that resulted in the death of Sneller. As part of the plea agreement, the government agreed to move to dismiss all other charges.

King's PSR calculated his sentence using § 2D1.1(a)(1), which imposes a base offense level of 43 when the defendant has a conviction for a prior similar offense. This is in contrast to § 2D1.1(a)(2), which imposes a base offense level of 38 when the defendant does not have a conviction for a prior similar offense. The government contended that a 1984 conviction for delivery of marijuana counted as a conviction for a prior similar offense.[2] King objected, claiming that a prior offense triggers § 2D1.1(a)(1) only when it is recent enough to count in calculating the criminal history category under U.S.S.G. Chapter 4 as well. King argued that "the default position is that to be an eligible predicate, it must score criminal history points under Chapter 4." J.A. at 60 (Dec. 20, 2006, Sent. Hr'g at 5:6-17). Because the 1984 conviction was too old to count in calculating the criminal history category, *see* J.A. at 110 (PSR ¶ 134); U.S.S.G. § 4A1.2(e) (setting time limits of ten and fifteen years for offenses used in calculating criminal history), King urged the district court not to use the 1984 conviction when calculating the base offense level under § 2D1.1(a)(1). The district court concluded that a plain reading of the Guidelines showed that "there appears to not be a time period" that would limit the scope of § 2D1.1(a)(1). J.A. at 62 (Sent. Hr'g at 7:3-17). The district court then set King's base offense level at 43.

---

[2]Whether the marijuana conviction was actually "similar" is not contested on appeal.

On December 21, 2006, the district court sentenced King to a 288-month term of imprisonment, and King filed a timely appeal.

## II. DISCUSSION

### A. Standard of Review

"We review de novo the sentencing court's interpretation of the Sentencing Guidelines and statutes, and we review for clear error its factual findings." *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002), *cert. denied*, 537 U.S. 1238 (2003).

### B. Interpreting § 2D1.1

King asserts that the time limits that would bar a 1984 conviction from consideration under the criminal history category provisions of § 4A1.2(e)[3] also apply to exclude stale convictions under § 2D1.1(a)(1). King argues that, as a default rule, "only convictions that qualify for criminal history points generally should be used as predicate offenses to increase base offense levels." Appellant Br. at 12. We conclude that both the text of the Guidelines and other circuits' conclusions contradict King's arguments.

King puts forward several arguments, based on both Chapters 2 and 4 of the U.S.S.G., to explain why we should extend the time limits of § 4A1.2(e) to Chapter 2. First, King contends that the text of § 4B1.4, the Guidelines version of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), makes it clear that § 4A1.2(e) creates a default time limit for the entire U.S.S.G. King points to § 4B1.4 because an application note for that provision states that § 4A1.2's time limits do not apply; according to King, the disclaimer of § 4A1.2's reach must mean that § 4A1.2 would otherwise serve as the default rule. An application note to § 4B1.4 makes it clear that "the time periods for the counting of prior sentences under § 4A1.2" are not "applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e)." U.S.S.G. § 4B1.4 cmt. n.1. Yet even if § 4A1.2(e) does create a default time-limit within Chapter 4, there is no reason to believe that a limit in a chapter on criminal history would necessarily span all other chapters. Section 4B1.4's explicit disclaimer of § 4A1.2's time limits does not prove the existence of a default time limit in § 2D1.1(a)(1) because not only is § 4B1.4 in close proximity to § 4A1.2, but also § 4B1.4 explicitly references Part A of Chapter 4. *See* U.S.S.G. § 4B1.4(c) ("The criminal history category for an armed career criminal is the greatest of . . . the criminal history category from Chapter Four, Part A . . . ."). Thus, the decision to disclaim § 4A1.2's time limits within § 4B1.4 may not in fact establish § 4A1.2's role as a default and may instead have more to do with the Sentencing Commission's ("Commission") need to ensure that the Guidelines are clear when one provision references another.

The Seventh Circuit, in addressing this argument, also concluded that § 4B1.4's disclaimer of § 4A1.2's time limits does not mean that the time limits of § 4A1.2 are the default rule in Chapter 2:

> The fact that § 4B1.4 (Armed Career Criminal) makes explicit that the 15-year limit does *not* apply to that section is not to the contrary. The Sentencing Commission's explicit rejection of the 15-year limit in this section does not mean that the Commission intended to apply the 15-year limit in sections that say nothing about such a limit. Unlike § 2L1.2, § 4B1.4 is in the same chapter as the criminal

---

[3]Section 4A1.1 provides the structure for the determination of the criminal history category, but the applicable time periods for prior convictions that are counted appear in § 4A1.2(e). According to § 4A1.1's commentary, "§§ 4A1.1 and 4A1.2 must be read together." U.S.S.G. § 4A1.1 cmt.

history section.  Moreover, § 4B1.4(c)(1) specifically utilizes the criminal history calculation of Chapter 4, Part A.  Thus, clarity demanded that the Commission explicitly state that the time-period limitation did not apply when determining whether a defendant qualifies for application of § 4B1.4.  The fact that the Commission was explicit in a section where explicitness was particularly necessary does not indicate that, unless explicitly rejected, the time limit always applies.  No such considerations of clarity would naturally lead to the explicit rejection of this time limit in § 2L1.2(b).

*United States v. Gonzalez*, 112 F.3d 1325, 1331 (7th Cir.) (citation omitted), *cert. denied*, 522 U.S. 962 (1997).  We find this analysis persuasive, and we also conclude that the rejection of the time limit in § 4B1.4 does not mean that § 4A1.2(e) applies as a default in Chapter 2.

King's contention that the time limits of § 4A1.2(e) are a default in Chapter 2 is further weakened because some provisions of Chapter 2 explicitly adopt the time limits of § 4A1.2(e).  If § 4A1.2(e) applied as an unstated background rule, the explicit mention of § 4A1.2(e) in Chapter 2 would be unnecessary.  The fact that some provisions of Chapter 2 adopt § 4A1.2(e)'s time limits, but § 2D1.1(a)(1) does not explicitly adopt the limits of § 4A1.2(e), suggests to us that § 4A1.2(e) is not applicable to § 2D1.1(a)(1).  For instance, § 2K1.3(a)(1), regarding the possession and transportation of explosive materials, provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K1.3(a)(1).[4]  An application note for § 2K1.3 cross-references §§ 4A1.1 and 4A1.2 and states that the sentencing court should "use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)."  U.S.S.G. § 2K1.3 cmt. n.9.  Similarly, § 2K2.1(a), regarding the transportation, receipt, and possession of firearms, has several provisions that refer to previous felony convictions.  There too, an application note directs the sentencing court to "use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)."  U.S.S.G. § 2K2.1 cmt. n.10.  The fact that provisions in Chapter 2 explicitly invoke the limits of §§ 4A1.1 and 4A1.2 when they wish them to apply strongly suggests that the time limits do not apply as a default in Chapter 2; instead, the explicit references to § 4A1.1 in other chapters suggest that the time limits of § 4A1.2(e) apply only when the Guidelines invoke them.

Anticipating this argument, King asserts that the references to §§ 4A1.1 and 4A1.2 found in §§ 2K1.3 and 2K2.1 are "not even necessary, given that Congress only mentions the limit on convictions when it means to do away with that limit in a specific context.  The note is included to avoid separate consideration of related sentences."  Appellant Br. at 13.  King's argument is unavailing.  In both §§ 2K1.3 and 2K2.1, the time limit is mentioned only when the Guidelines instruct a sentencing court to *apply* the time limit; King's claim that "Congress only mentions the limit on convictions when it means to do away with that limit in a specific context" is clearly contradicted by the Guidelines.  Furthermore, King's claim that Chapter 2 mentions § 4A1.2 only to avoid separate consideration of related sentences is equally unavailing, because when the Guidelines wish to avoid separate consideration of related sentences, the Guidelines state exactly that.  *See, e.g.*, U.S.S.G. § 2D1.5 cmt. n.3 ("A sentence resulting from a conviction sustained prior to the last overt act of the instant offense is to be considered a prior sentence under § 4A1.2(a)(1) and not part of the instant offense."); U.S.S.G. § 2E1.1 cmt. n.4 ("Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense.").  Lastly, importing the time limits of § 4A1.2(e) would not even address the issue of separate consideration of related sentences in §§ 2K1.3 and 2K2.1 because applying the time limits of § 4A1.2(e) ensures that §§ 2K1.3 and

---

[4]Section 2K1.3(a)(2) is analogous but applies if the defendant has only one felony conviction.

2K2.1 use offenses from the *same* time period as would be used in Chapter 4, therefore, increasing the chances that related sentences would be double counted.

Although both §§ 2K1.3 and 2K2.1 invoke § 4A1.2 in order to apply the time limit, King points out that § 2L1.2, in contrast, appears to waive the applicability of § 4A1.2's time limit. According to King, § 2L1.2's waiver of § 4A1.2's time limit proves that § 4A1.2(e) is indeed a default for Chapter 2. We disagree. Section 2L1.2 sets the Guidelines range for those convicted of unlawfully entering or remaining in the United States. Section 2L1.2 can increase the defendant's base offense level by 12 points "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less." U.S.S.G. § 2L1.2(b)(1)(B). The Guidelines application note then explains that "'[s]entence imposed' has the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of § 4A1.2 . . . , *without regard to the date of the conviction*." U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (emphasis added). Similarly, when defining "aggravated felony" an application note to § 2L1.2 states that "'aggravated felony' has the same meaning given that term in section 101(a)(43) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(43)), *without regard to the date of conviction* for the aggravated felony." U.S.S.G. § 2L1.2 cmt. n.3(A). At first blush, the use of the phrase "without regard to the date of conviction" does appear to support King's position. However, the Commission's use of the phrase has another possible explanation other than King's rationale that it signals the rejection of an otherwise present and unstated default.

According to two of our sister circuits, the reason why § 2L1.2's application notes explicitly state "without regard to the date of conviction" is to maintain Chapter 2's default of no time limit when the Guidelines draw upon definitions from other sources that do have time limits. The Eleventh Circuit explained:

> Recall that the definitions of "sentence imposed" and "aggravated felony," the two terms in § 2L1.2 with the "date of conviction" language, are imported from provisions outside of § 2L1.2. *See* U.S.S.G. § 2L1.2, application nn.1(B)(vii), 3(A). Each of those provisions has language limiting the time period in which certain kinds of convictions can apply. It is entirely possible, indeed likely, that the Sentencing Commission wanted to import into § 2L1.2 the substantive definitions from these other provisions, but not the time limitations they contain, and that is the reason it added the "without regard to the date of conviction" language in the application notes defining "sentence imposed" and "aggravated felony."

*United States v. Camacho-Ibarquen*, 410 F.3d 1307, 1313 (11th Cir.), *cert. denied*, 546 U.S. 951 (2005). The Eleventh Circuit's rationale is compelling because it is clearly true that application notes to § 2L1.2 cross reference two sections that already included time limits. Of the cross-referenced provisions, we have already discussed Chapter 4's time limits, and 8 U.S.C. § 1101(a)(43) includes a fifteen-year time limit. *See* 8 U.S.C. § 1101(a)(43) (stating that the term "['aggravated felony'] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country *for which the term of imprisonment was completed within the previous 15 years*" (emphasis added)). The Tenth Circuit, citing *Camacho-Ibarquen*, reached the same conclusion as the Eleventh Circuit: "These alterations to the borrowed definitions evince an intent to treat all prior convictions the same, regardless of their age, for purposes of § 2L1.2. Why, if age limits are explicitly eliminated from borrowed definitions, should we assume that age limits are implicitly imported into unborrowed definitions that contain no explicit age limits?" *United States v. Torres-Duenas*, 461 F.3d 1178, 1182 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 3054 (2007). Thus, we agree with the Tenth and Eleventh Circuits that "without regard to the date of conviction" does not eliminate a default time limit that exists in Chapter 2, as King claims, but instead the Commission simply intended to make

it clear that Chapter 2's no-time-limit default continues to apply even when the Guidelines draw upon terms from provisions that do contain time limits.

Although the instant case asks whether § 4A1.2(e)'s time limits apply to § 2D1.1(a)(1), it is worth noting that no circuit that has addressed the issue of whether Chapter 4's time limits apply to Chapter 2—neither the Seventh, Ninth, Tenth, nor Eleventh Circuits—has ever held that a conviction is too old to qualify for consideration under § 2L1.2. *Camacho-Ibarquen*, for instance, involved a defendant challenging a 2003 sentence for which the sentencing court used convictions from 1985 and 1988 under § 2L1.2. *Camacho-Ibarquen*, 410 F.3d at 1310-11. In that case, the Eleventh Circuit held that when there is no mention of a time limit, the court will not read one into Chapter 2. *See id.* at 1311 ("Neither the text of § 2L1.2 nor the application notes that follow state that 'a conviction' must have occurred within a particular time period before the current offense for the relevant enhancement listed in § 2L1.2(b)(1)(A)-(E) to apply."). Similarly, the Seventh Circuit also rejected the argument that § 2L1.2 implicitly adopts the limits of § 4A1.2. *See Gonzalez*, 112 F.3d at 1330. The Seventh Circuit and Ninth Circuits have emphasized that the provisions in Chapter 2 and the criminal history calculations in Chapter 4 serve different purposes and therefore reasonably use different time periods: "In sum, '[t]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States.'" *Id.* (alteration in original) (quoting *United States v. Maul-Valverde*, 10 F.3d 544, 547 (8th Cir. 1993)); *see also United States v. Lara-Aceves*, 183 F.3d 1007, 1013-14 (9th Cir. 1999), *overruled on other grounds by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (en banc). The Ninth Circuit has also stated that "it is apparent that § 2L1.2 on its face contains no temporal limitation on the prior conviction used to enhance sentences for illegal reentry" and also concluded that there was no implicit time limitation. *United States v. Olmos-Esparza*, 484 F.3d 1111, 1116 (9th Cir.), *cert. denied*, ___ U.S ___, 128 S. Ct. 428 (2007). Finally, as already stated, the Tenth Circuit explicitly agreed with the Eleventh Circuit's determination. *See Torres-Duenas*, 461 F.3d at 1181-82.

We have never addressed the question of whether the time limits of § 4A1.2(e) apply to Chapter 2, and more specifically whether they apply to § 2D1.1(a)(1). There is, however, one case where we looked to Chapter 4 of the Guidelines to help define a term in Chapter 2. *United States v. Arnold*, 58 F.3d 1117, 1120 (6th Cir. 1995) (looking to § 4B1.2 to define "crime of violence" in § 2K2.1(a)(4)). *Arnold*, therefore, shows that the words and rules of Chapter 4 do not exist in isolation and are validly considered as part of an exegesis of Chapter 2. That said, *Arnold* does not lead us to the conclusion that the time limits of Chapter 4 apply to Chapter 2. In *Arnold* we looked to Chapter 4 in order to find a definition for a term that was undefined in Chapter 2; thus, we looked to Chapter 4 because Chapter 2 was lacking an important piece of information, and Chapter 4 provided us with some guidance. In contrast, when considering whether Chapter 2 includes the time limits of Chapter 4, we are not faced with a situation where Chapter 2 is somehow lacking important information; Chapter 2 itself suggests that Chapter 4's time limits do not apply as a default. Therefore, as to the issue of time limits, Chapter 2 stands alone and does not require consideration of Chapter 4. Given that we have never addressed this issue before, we believe that the explanations offered by the Seventh, Ninth, Tenth, and Eleventh Circuits are persuasive, and we conclude that there is no default time limit in Chapter 2.

Finally, our conclusion is further buttressed by the belief that there is no reason to conclude that the time limits that the Commission created for § 4A1.2(e) were intended to signal a global policy that disparages all use of convictions older than fifteen years. First, as we already noted, the criminal history provisions in Chapter 4 are intended to accomplish different things than the references to prior convictions in Chapter 2. *See Gonzalez*, 112 F.3d at 1330 ("In sum, '[t]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States.'" (alteration in original) (citation omitted)). Second, there is not a

general policy against considering sentences that are fifteen years or older because in other contexts, such as the ACCA, it is clear that we are supposed to consider those older sentences; this court, in unpublished opinions, and many other circuits are all in agreement that the ACCA does not limit the age of convictions that can trigger enhancements. *See United States v. Howard*, 216 F. App'x 463, 475 (6th Cir.) (unpublished) ("The ACCA does not exclude convictions based on remoteness in time."), *cert. denied*, 127 S. Ct. 2900 (2007); *see also United States v. Sullivan*, 219 F. App'x 414, 417 (6th Cir. 2007) (same); *United States v. Paul*, 156 F.3d 403, 404 (2d Cir. 1998) (noting that the time limits for prior sentences under § 4A1.2 are inapplicable to sentence enhancement under the ACCA); *United States v. Wright*, 48 F.3d 254, 256 (7th Cir. 1995) (agreeing with the holdings of the Third, Fourth, Fifth, Eighth, and Eleventh Circuits that the ACCA has no time limits).

## C. Rule of Lenity

If we were to find § 2D1.1(a)(1) to be ambiguous, King asks us to apply the rule of lenity to construe in his favor any interpretation of § 2D1.1(a)(1). As we have held above, we conclude that § 2D1.1(a)(1) unambiguously precludes the application of § 4A1.2(e)'s time limits. However, even if we were to find some ambiguity in § 2D1.1(a)(1), there would not be enough ambiguity to justify applying the rule of lenity. "In evaluating whether a statute is ambiguous for rule-of-lenity purposes, it is not enough for the plain language to be unclear; only when the plain language, structure, and legislative history provide no guidance will we apply the rule of lenity." *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004). As we have demonstrated, at the very least, the structure of Chapter 2—that provisions that intend to apply the time limits of § 4A1.2(e) explicitly invoke Chapter 4—gives us guidance as to the meaning of § 2D1.1(a)(1) and makes the rule of lenity inapplicable.

## III. CONCLUSION

For the foregoing reasons, we hold that § 2D1.1(a)(1) contains no default time limit that would bar consideration of convictions older than fifteen years of age. The district court correctly applied § 2D1.1(a)(1) by including the 1984 conviction when calculating King's base offense level. Therefore, we **AFFIRM** King's sentence.