[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10481

_____

D. C. Docket No. 06-20489-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MORIS MATURIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 11, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and ALBRITTON,* District
Judge.

PER CURIAM:

_____

*Honorable W. Harold Albritton, III, United States District Judge for the Middle District
of Alabama, sitting by designation.

Moris Maturin, a native and citizen of Haiti, who pleaded guilty to illegally reentering the United States after having previously been deported, appeals the enhancement of his sentence by 17 months for having committed an aggravated felony before his deportation. 8 U.S.C. § 1326(a). Maturin was deported in December 1994, approximately six years after he completed a term of imprisonment for possession and sale of crack cocaine. The district court enhanced Maturin's sentence by 17 months because he had committed an "aggravated felony" before he had been deported. Id. §§ 1101(a)(43), 1326(b)(2). Maturin argues that he is not subject to the enhancement because the term of imprisonment for his offense ended more than 15 years before his reentry. Because the text of section 1101(a)(43) makes clear that the temporal restriction upon which Maturin relies applies only to violations of foreign law, not domestic law, we affirm.

## I. BACKGROUND

At age 16, Maturin was convicted and sentenced to 30 months of imprisonment for possession and sale of crack cocaine and was released from prison on April 21, 1988. Maturin was deported in December 1994. In May 2006, Maturin reentered the United States at Miami International Airport where he presented a passport in the name of "Willie James Silvers." Maturin was

fingerprinted, and an identity check revealed that both Maturin and Silvers had extensive criminal records and Maturin had previously used the alias "Theodore Irlain," which was the name of an alien who had become naturalized in 1998.

After he was advised of and waived his rights to remain silent and have counsel under the Fifth and Sixth Amendments, Maturin was interviewed by law enforcement. Maturin admitted to obtaining and using Silvers's birth certificate and social security card to obtain a passport in Silvers's name; being an illegal alien; applying for a United States visa from the United States consulate in Haiti under the name "Theodore Irlain," and obtaining a social security card and resident alien card under that name; being arrested in 2005 in Sebring, Florida, for providing false identification to law enforcement; and being convicted in 1987 of possession and sale of cocaine. Later investigation revealed that Maturin had not applied for permission to reenter the United States and had no authority to use Silvers's name or passport.

A federal grand jury returned a four-count indictment that charged Maturin with attempting to reenter the United States without permission after being deported, 8 U.S.C. §§ 1326(a), (b)(2) (count 1); attempting to use a fraudulent passport, 18 U.S.C. §1544 (count 2); falsely representing that he was a U.S. citizen in order to gain entry, id. § 911 (count 3); and possessing and using the

identification of another in relation to a felony violation of section 1326, id. §

1028A (count 4). Maturin pleaded guilty to counts 1 and 4 with the understanding

that the government would ask that counts 2 and 3 be dismissed. The district court

accepted Maturin's guilty plea.

The presentence investigation report suggested that Maturin's sentence for

count 1 be enhanced because he had committed an aggravated felony before he was

deported in 1994. Maturin's counsel objected that the enhancement of Maturin's

sentence was barred because he had completed his prison term for the offense more

than 15 years earlier. The court overruled the objection on the ground that the

restriction excluded from the definition of "aggravated felony" crimes in violation

of foreign law, not domestic law. The court sentenced Maturin to 41 months of

imprisonment on count 1 and 24 months of imprisonment on count 4, to be served

consecutively. The 41-month sentence for count 1 consisted of the 24-month

statutory maximum, 8 U.S.C. § 1326(a), and a 17-month statutory enhancement, id.

§ 1326(b)(2). Maturin now appeals that enhancement.

## II. STANDARD OF REVIEW

We review questions of statutory interpretation de novo. United States v.

Grigsby, 111 F.3d 806, 816 (11th Cir. 1997).

## III. DISCUSSION

The relevant portion of section 1101(a)(43) distinguishes between offenses under domestic law and foreign law as follows:

> The term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

8 U.S.C. § 1101(a)(43). Relying on the text of the statute, legislative history, and the rule of lenity, Maturin argues that section 1101(a)(43) applies a 15-year temporal restriction to both domestic and foreign offenses. We disagree.

The phrase "for which the term of imprisonment was completed within the previous 15 years," in section 1101(a)(43), modifies the phrase "an offense in violation of the law of a foreign country," not the earlier phrase about domestic offenses. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1314 n.2 (11th Cir. 2005) (stating in dicta that "the time limitation in INA § 101(a)(43) only applies to convictions for violations of foreign law"); United States v. Gitten, 231 F.3d 77, 80 (2d Cir. 2000) (same); United States v. Gonzales, 112 F.3d 1325, 1329–31 (7th Cir. 1997) (same); United States v. Maul-Valverde, 10 F.3d 544, 546 (8th Cir. 1993) (same). The repetition of the phrase "applies to . . . an offense" in the middle of section 1101(a)(43) establishes that the provision consists of two parallel halves, each of which satisfies "[t]he term [aggravated felony]." As the

5

Second Circuit has observed, if the 15-year limitation were intended to qualify both the first and second halves of the provision, the provision could have been written in one part.  See  Gitten, 231 F.3d at 80.  Congress could have stated that an aggravated felony is an offense "in violation of federal, state, or foreign law for which the term of imprisonment was completed within the previous 15 years."  We cannot discount the repetition of the phrase "applies to . . . an offense" or the meaning that repetition conveys in ordinary speech.  See United States v. Menasche, 348 U.S. 528, 538-39, 75 S. Ct. 513, 520 (1955) (courts must give effect to every word in a statute where possible).

Maturin argues that the temporal restriction applies to both halves of section 1101(a)(43) because the word "and" is used to join the first and second halves of the provision and there is no punctuation separating the two halves.  He cites in support a passage from a well-known treatise that states the uncontroversial proposition that, "[w]here two or more requirements are provided in a section and it is the legislative intent that all the requirements be fulfilled in order to comply with the statute, the conjunctive 'and' shall be used."  1A Norman J. Singer, Sutherland Statutory Construction § 21:14 (6th ed. 2006).  Maturin's argument fails.

Treating "and" as a word that connects "two or more requirements" that must be satisfied for an offense to constitute an aggravated felony leads to a bizarre interpretation that not even Maturin intends. This reading would require us to define an aggravated felony as an act that is both (1) a violation of either federal or state law, and (2) a violation of foreign law. This reading is absurd. The use of "and" to connect the two halves of the provision means that "[t]he term [aggravated felony]" is satisfied by either half of what follows, as opposed to one of the halves, but the use of "and" has no bearing of whether the temporal restriction qualifies both halves.

The plain meaning of section 1101(a)(43) controls the outcome of this appeal. Because section 1101(a)(43) is clear, we need discuss neither legislative history nor the rule of lenity. See United States v. Veal, 153 F.3d 1233, 1245 (11th Cir.1998) ("Review of legislative history is unnecessary 'unless a statute is inescapably ambiguous.'" (quoting Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985))); Salinas v. United States, 522 U.S. 52, 66, 118 S. Ct. 469, 478 (1997) ("The rule [of lenity] does not apply when a statute is unambiguous . . . .").

## IV. CONCLUSION

Maturin's sentence is **AFFIRMED.**