RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 12-1277

*v.*

WALTER LEE JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cr-182-1—Robert Holmes Bell, District Judge.

Argued: December 4, 2012

Decided and Filed: February 7, 2013

Before: MARTIN and BOGGS, Circuit Judges; and COLLIER, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Ray Kent, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Ray Kent, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. John C. Bruha, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

COLLIER, District Judge. Appellant Walter Lee Johnson appeals his sentence pursuant to § 2D1.1(a)(1) of the United States Sentencing Guidelines ("USSG") for distributing a controlled substance that resulted in death because he argues his prior

─────────────────

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

conviction for delivery of heroin was not a "similar offense."  We disagree, and **AFFIRM** the district court's judgment.

I

Johnson was a heroin dealer in Kalamazoo, Michigan.  One of his customers was co-defendant Eric Taylor who lived in Coldwater, Michigan.  On August 17, 2010, Taylor, along with Steven Smith and seventeen-year-old Jesse Payne, traveled from Coldwater to Kalamazoo to purchase heroin from Johnson.  They arrived at Johnson's residence after midnight.  Taylor entered and purchased heroin.

The men then headed back to Coldwater.  Smith was the driver; Taylor and Payne were sitting in the rear of the vehicle.  At some point, they pulled over at a parking lot to use heroin.  Payne prepared a needle for himself and had Taylor inject it.  At a later point, Smith pulled over and the men observed Payne was unconscious.  Smith continued driving until he reached Taylor's apartment in Quincy, Michigan.

Upon arriving at Taylor's apartment, Smith and Taylor moved Payne's unconscious body through the back window of the apartment.  They then decided to move his body back through the window and leave him under a tree.  Other individuals at the apartment complex called for help.  When the police and paramedics arrived, Payne was pronounced dead.  The autopsy report revealed Payne died of acute heroin toxicity.

Johnson, Smith, and Taylor were charged in state court.  Johnson and Taylor were subsequently indicted by a federal grand jury on June 8, 2011.  Johnson was charged with distribution of heroin resulting in death; distribution of heroin to a minor resulting in death; and two counts of possession with intent to distribute heroin.  Pursuant to a written plea agreement, Johnson agreed to plead guilty to Count One of the Indictment charging him with distribution of heroin resulting in death.  Among other conditions, the Government agreed not to file an information seeking a sentence enhancement pursuant to 21 U.S.C. § 851 based on Johnson's prior felony conviction.

The probation office prepared a presentence investigation report for Johnson prior to sentencing. The probation office determined Johnson's base offense level would be 43 pursuant to USSG § 2D1.1(a)(1) because he was convicted under 21 U.S.C. § 841(b)(1)(C), the offense resulted in death or serious bodily injury, and Johnson had a prior conviction for a "similar offense." The probation office noted Johnson had a prior conviction from March 31, 2009, for delivery/manufacture of a controlled substance less than 50 grams. The prior conviction involved 3.5 grams of heroin found in Johnson's possession. Johnson received a three-level reduction pursuant to USSG §§ 3E1.1(a) and (b) for acceptance of responsibility. His total offense level was 40. He had a criminal history category of IV.

Johnson filed an objection prior to sentencing regarding the application of USSG § 2D1.1(a)(1) in determining his base offense level. He argued his prior conviction was not a "similar offense" under USSG § 2D1.1(a)(1). At sentencing, the district court denied Johnson's objection.

The Government filed a motion for downward departure pursuant to USSG § 5K1.1. The district court granted the Government's motion and departed downward by five levels. Johnson's adjusted offense level was 35. With a criminal history category of IV, Johnson's advisory guidelines range was 235 to 293 months and his effective guidelines range was 240 to 293 months because of a mandatory minimum, pursuant to 21 U.S.C. § 841(b)(1)(C). The district court imposed a sentence of 240 months.

Johnson filed a timely appeal on March 6, 2012.

II

A district court's interpretation of the United States Sentencing Guidelines is reviewed *de novo*. *United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003).

III

Johnson contests the district court's interpretation of the term "similar offense" found in USSG § 2D1.1(a)(1). Johnson pleaded guilty to distribution of heroin resulting in death in the instant case. Because Johnson's prior conviction for delivery of heroin did not involve death or serious bodily injury, he contends the district court erred in concluding that his prior conviction was a "similar offense" for purposes of applying a base offense level of 43 pursuant to USSG § 2D1.1(a)(1). The Government, on the other hand, argues that the term "similar offense" is synonymous with the term "felony drug offense" used in 21 U.S.C. § 841(b)(1)(C) and that the district court properly applied USSG § 2D1.1(a)(1).

Section 2D1.1(a)(1) of the United States Sentencing Guidelines sets a base offense level of 43 "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a *similar offense*." USSG § 2D1.1(a)(1) (emphasis added). Section 2D1.1(a)(2) provides for a base offense level of 38 if--all else remaining the same--the defendant does not have a prior conviction for a similar offense.

Because "similar offense" is not defined in USSG § 2D1.1(a)(1), Johnson suggests that the court adopt the "common sense approach" discussed in Application Note 12 of USSG § 4A1.2 to determine whether his prior conviction satisfies USSG § 2D1.1(a)(1). Application Note 12 provides a non-exclusive list of factors that can be used to determine whether an unlisted offense is similar to a listed offense when computing a defendant's criminal history category. Chapter 4 of the guidelines, however, addresses entirely different matters from Chapter 2. Although courts may occasionally look to other chapters in the Guidelines for guidance in the absence of any other information, Johnson has not demonstrated that this is one of those instances.

Instead, we find it far more instructive to review the guideline provision, its history, and the relevant statute. The background section of the commentary for USSG

§ 2D1.1 briefly discusses how the base offense levels were derived. "The base offense levels in § 2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking." USSG § 2D1.1 cmt. background (2011); *see United States v. Rebmann*, 321 F.3d 540, 543-44 (6th Cir. 2003) (noting "the commentary to § 2D1.1 explains that the base offense levels set forth in that section are provided by the statute itself").

Amendment 123 of the Guidelines, which went into effect November 1, 1989, provides additional guidance on the intended meaning. In its original form, USSG § 2D1.1(a)(1) stated a defendant's base offense level would be 43 "for an offense that results in death or serious bodily injury with a prior conviction for a similar drug offense." USSG app. C, Vol. I, at 59 (2003). The commentary for USSG § 2D1.1(a)(1) further explained that "'[s]imilar drug offense' as used in §2D1.1(a)(1) means a prior conviction as described in 21 U.S.C. §§ 841(b) or 962(b)." *Id.* After the enactment of Amendment 123, however, this language was deleted and replaced with the language presently found in the guideline provision. The commentary language was also deleted and replaced with the following: "'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841." *Id.* In explaining the changes, the Sentencing Commission stated:

> The purpose of this amendment is to provide that subsections (a)(1) and (a)(2) apply only in the case of a conviction under circumstances specified in the statutes cited. The amendment also clarifies that the term "mixture or substance" has the same meaning as it has in the statute.

*Id.* Thus, while the definition of "similar drug offense" was removed from the commentary, the Sentencing Commission still directed courts to turn to the relevant statute to determine whether USSG §§ 2D1.1(a)(1) and (a)(2) were applicable. Here, the relevant statute is 21 U.S.C. § 841(b)(1)(C).

Notably, although USSG § 2D1.1(a)(1) uses the term "similar drug offense" and 21 U.S.C. § 841(b)(1)(C) uses the term "felony drug offense," the guideline and statute mirror one another in several respects. The statute provides that a defendant will be subject to a maximum statutory sentence of thirty years if the instant controlled

substance offense was committed "after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(C). However, "if death or serious bodily injury results from the use of such substance," the defendant will face a sentence of life imprisonment. *Id.* Thus, both the guideline provision and the statute contemplate sentencing a defendant to a term of life imprisonment if he has committed a controlled substance offense that resulted in death or serious bodily injury and has a prior conviction. In fact, USSG § 2D1.1(a)(1) merely reinforces the enhanced penalty mandated by statute. Taking into account the plain language of both the guideline provision and the statute, we conclude that the Sentencing Commission intended the term "similar offense" to be synonymous with the term "felony drug offense."

Johnson offers several alternative grounds upon which his sentence should be reversed, but all of his arguments lack merit. First, Johnson contends the district court should have focused more on the outcome or magnitude of his offenses--that is, the instant offense resulted in death whereas the prior conviction did not, and the prior conviction only involved a small amount of heroin. While these factors are not insignificant, the defendant's underlying conduct cannot be ignored. *Cf. United States v. Westry*, 524 F.3d 1198, 1220 n.12 (11th Cir. 2008) (determining "possession" of a controlled substance was a similar offense to "possession with the intent to distribute"). Here, in both instances, Johnson's underlying conduct--and the underlying substantive offense--was the distribution of heroin.[1] Because these offenses are, in fact, "similar," the district court did not err in applying § 2D1.1(a)(1).

Second, Johnson claims Congress did not intend for every defendant with a prior felony drug conviction to receive an increased sentence under 21 U.S.C. § 841(b)(1)(C). As evidence, he notes the Government must file an information pursuant to 21 U.S.C. § 851 if it intends to seek a sentence enhancement on the basis of a prior conviction.

---

[1] In 2008, this court heard two cases (from the same district court that decided the instant case) in which the defendant was sentenced under USSG § 2D1.1(a)(1) for a "similar offense" but the similar offense was a prior drug conviction that did not involve death or serious bodily injury. *See United States v. King*, 516 F.3d 425 (6th Cir. 2008); *United States v. Atkins*, 289 F. App'x 872 (6th Cir. 2008). The parties in those cases never challenged the application of the phrase "similar offense" on appeal. Nonetheless, it is noteworthy that this court, in explaining § 2D1.1(a)(1) stated "[t]he base offense level for a conviction under 21 U.S.C. § 841(b)(1)(C) for distributing an illegal drug that results in death is 43 if the defendant has been *convicted previously for selling illegal drugs*." *Atkins*, 289 F. App'x at 875 (emphasis added).

Section 851, however, ensures that defendants are provided certain procedural safeguards before receiving a mandatory sentence enhancement on the basis of a prior conviction. Once those requirements have been satisfied, those defendants are subject to an enhanced sentence. Johnson offers no authority to the contrary. Here, the only reason Johnson was not subject to the statutory mandatory minimum sentence was because the Government did not file an information pursuant to § 851, in accordance with the terms of Johnson's plea agreement. Notwithstanding the terms of Johnson's plea agreement, the district court was still permitted to take into account Johnson's prior felony drug conviction when determining whether to apply USSG § 2D1.1(a)(1). Johnson also cannot argue he was without notice because the probation office applied USSG § 2D1.1(a)(1) when calculating his advisory guidelines range in the PSR and Johnson promptly objected.

Finally, Johnson avers that treating the term "similar offense" as synonymous with the term "felony drug offense" would result in a sentence that is disproportionate to the crime. To illustrate, he uses the example of a defendant convicted of first-degree murder who is subject to a base offense level of 43 pursuant to USSG § 2A1.1. Under the Guidelines Sentencing Table, a base offense level of 43 results in a life sentence. Johnson argues it would be unfair for him and the defendant convicted of first-degree murder to have the same base offense level because he, unlike the other defendant, did not act with the intent and purpose to kill.

In *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991), a plurality of the Supreme Court explained "[t]he Eighth Amendment does not require strict proportionality between crime and sentence." *Id.* (Kennedy, J., concurring). Instead, "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Therefore, in this circuit, "we look to whether a sentence is 'extreme' and 'grossly disproportionate' to assess whether the Eighth Amendment has been violated." *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003). Courts generally "grant substantial deference to the . . . legislatures . . . in determining the types and limits of punishments for crimes." *Id.* (citing *Harmelin*, 501 U.S. at 999) (ellipses in original).

Johnson has not shown his sentence is so "extreme" and "grossly disproportionate" that it runs afoul of the Eighth Amendment. On the contrary, the statute Johnson violated, 21 U.S.C. § 841(b)(1)(C), already mandates a life sentence for a defendant who commits an applicable controlled substance offense that involves death or serious bodily injury and who has a prior felony drug conviction, if the § 851 notice requirement is met. Moreover, Congress has even expressly required a life sentence for certain drug offenses that do not result in death. For example, 21 U.S.C. § 841(b)(1)(A) requires a life sentence if a defendant commits an applicable controlled substance offense and has two prior felony convictions. Hence, imposing a life sentence under USSG § 2D1.1(a)(1) in this context does not implicate Johnson's rights under the Eighth Amendment.

Accordingly, the term "similar offense" is synonymous with the term "felony drug offense" for purposes of interpreting USSG § 2D.1.1(a)(1), and the district court did not err in applying USSG § 2D.1.1(a)(1) when it imposed Johnson's sentence.

IV

For the foregoing reasons, we **AFFIRM** the district court's judgment.