NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0207n.06

Case No. 22-5410

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 02, 2023
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MANTELL ALABI STEVENS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

OPINION

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. After Nick Adams died of a fentanyl overdose, a jury held Mantell Alabi Stevens, a drug dealer, responsible for his death. Stevens claims that there were three defects in his trial and sentencing. We disagree and affirm his convictions and sentence.

I.

Mantell Alabi Stevens sold what turned out to be fentanyl to Ashley Markham, who in turn sold it to Nick Adams. Apparently thinking it was heroin rather than fentanyl, Adams overdosed and died. The government charged Stevens with conspiracy to distribute fentanyl and heroin and distribution of fentanyl resulting in death. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846.

Before trial, the government used one of its peremptory challenges to strike an African American juror. Stevens challenged the strike under *Batson v. Kentucky*, 476 U.S. 79 (1986), claiming that it was motivated by racial discrimination. In response, the government claimed that

it struck the juror because she said she might know a potential witness and because she worked in the mental-health field. The court allowed the strike.

At trial, Stevens's attorney conceded the conspiracy charge. But he argued that the government hadn't established that Stevens sold the drugs that led to Adams's death. At the close of the government's case, Stevens moved for a judgment of acquittal, claiming that no reasonable juror could find him guilty. The district court denied his motion, and the jury found him guilty on both counts.

The Presentence Report ("PSR") recommended a base offense level of 43. To reach that number, it relied on Section 2D1.1(a)(1) of the Sentencing Guidelines, which applies when an offense causes death or serious bodily injury and the defendant has at least one prior conviction for a "similar offense." Stevens objected, arguing that his prior conviction for possessing crack cocaine wasn't a "similar offense" under the Guidelines. The district court disagreed, adopted the PSR's recommended base offense level, and sentenced Stevens to 480 months' imprisonment.

## II.

Stevens appeals, challenging (1) the district court's denial of his *Batson* challenge, (2) its denial of his motion for a judgment of acquittal, and (3) its application of Section 2D1.1(a)(1) at sentencing. We address each issue in turn.

## A.

*Batson challenge.* Parties are typically entitled to use peremptory challenges to strike a potential juror for "any reason at all." *Batson*, 476 U.S. at 89 (citation omitted). But under *Batson*, they can't strike potential jurors because of their race. *Id.* If a party challenges a strike on this ground, *Batson* requires a three-step process: (1) the party challenging the strike must present a prima-facie case of racial discrimination; (2) the proponent of the strike must offer a race-neutral

explanation; and (3) the trial court must decide whether the opposing party has proven purposeful discrimination. *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008). "The ultimate inquiry is whether the State was 'motivated in substantial part by discriminatory intent.'" *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019) (quoting *Foster v. Chatman*, 578 U.S. 488, 513 (2016)). Here, like the district court, we assume Stevens could make a prima-facie case and proceed directly to steps two and three. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991).

At step two, the government had to offer a race-neutral reason for striking the potential juror. *United States v. Cleveland*, 907 F.3d 423, 435 (6th Cir. 2018). Here, the government offered two: the potential juror worked in the mental-health field, and she might have known a potential government witness.

At step three, the district court concluded that Stevens didn't establish purposeful discrimination. *See id.* Since the district court is best positioned to make this call, we review under the deferential clear-error standard. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

Stevens hasn't challenged the government's first explanation: the juror's employment in the mental-health field. So any challenge to that reason is forfeited. *See Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 825 (6th Cir. 2020) (per curiam).

As for the government's second explanation, Stevens has presented three arguments that it was pretextual. First, Stevens pointed out in the district court that the potential witness was a government witness. But, as the district court noted, knowledge of a witness is a "legitimate" reason for the government to strike a juror even if it's the government's witness. R. 115, Pg. ID 493. Prior familiarity with a potential witness could bias a juror, regardless of which party calls the witness. So without any other signs of animus, the fact that the potential witness was the government's doesn't show pretext.

Second, Stevens argues on appeal that knowledge of the witness couldn't have been the real reason for the strike because the potential juror testified only that she "may" have known a potential witness. Appellant Br. 19 (citation omitted). He's right that the potential juror wasn't sure she knew the potential witness. But, as the district court pointed out, both parties had an opportunity to delve further into her knowledge. Neither did. In the face of both parties' silence, the only question is whether the government's silence was a cover for racial discrimination. That's a credibility judgment that the district court was well positioned to make after hearing the government's explanation. *See Snyder*, 552 U.S. at 477. Stevens hasn't shown it was clearly erroneous. And besides, the risk that a juror might know a witness is still a risk that the government can legitimately consider.

Finally, Stevens argues that the government didn't—and never intended to—call the witness, so striking a potential juror for knowing that witness could only be cover for discrimination. But, once again, the district court was in the best position to evaluate the government's motivations, and it concluded that the proffered reason was legitimate. That makes sense. The government often doesn't decide whether it's going to call a particular witness until trial is underway. That's because trial often goes differently than the parties expect at the outset. So before a trial starts, the prosecution often assumes that it may need several witnesses it ultimately doesn't. Thus, striking a juror based on possible knowledge of a witness—even if that witness ultimately doesn't testify—is reasonable. Stevens doesn't point to anything in the record showing that the district court's conclusion was clearly erroneous.

Stevens has failed to undermine one of the government's explanations, and he's presented no challenge to the other. So he hasn't shown that the government's strike was motivated by race.

*Flowers*, 139 S. Ct. at 2235. The district court didn't err, let alone clearly so, in denying Stevens's *Batson* challenge.

B.

*Motion for acquittal.* The district court's denial of the motion for acquittal was proper if, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, Stevens contends that the government failed to show that the drugs he sold to Markham were the same drugs that she sold to Adams. That's a necessary element of Section 841(b)(1)(C), so Stevens argues that the government's failure to establish that connection is fatal to his conviction. *See United States v. Hamm*, 952 F.3d 728, 738 (6th Cir. 2020) (noting that to be liable under Section 841(b)(1)(C), a defendant convicted on a conspiracy theory must have been part of the "distribution chain" of the drugs that killed the victim).

But the government offered evidence establishing that connection.[1] Specifically, it presented Markham's phone and Facebook records, which documented her actions the day before Adams died: She ordered a gram and a half of heroin. She sold some of it, then she "cut" it— meaning she added some fiber to the heroin so that she had more to sell. Then she sold some to Adams. In addition, Markham testified that at the time of Adams's death, Stevens was her regular

---

[1] Stevens claims this case is like *United States v. Saunders*, 325 F.2d 840 (6th Cir. 1964), in which we found the evidence insufficient to convict the defendant of drug distribution when it only established a "choice of reasonable probabilities," *id.* at 843. But *Saunders* isn't analogous. In that case, the only evidence the government presented was evidence that she and another person were observed "in the presence" of an informant when the informant obtained drugs. *Id.* Yet here, the government presented evidence directly connecting Stevens to Markham's drugs, and directly connecting those drugs to Adams.

and only source of heroin. That gave a rational juror enough to conclude that the same drugs Stevens sold to Markham, Markham sold to Adams.

Stevens presents five counterarguments, but none is persuasive. First, he argues that Markham's drug use impaired her memory, rendering her testimony unreliable. But we cannot weigh the credibility of witnesses—that task is reserved for the jury. *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006). What's more, both Stevens's attorney and the court alerted the jury to possible concerns with Markham's memory. Nonetheless, the jury credited her testimony. And we can't reevaluate that credibility determination on appeal.

Second, Stevens points to an alleged color discrepancy between the drugs he sold to Markham and those found at Adams's residence. Markham said in text messages and testimony that the drugs she purchased from Stevens were "light gray," but officers described the substance found at Adams's residence as "white" (when seen at the scene) or "white and green" (when examined under fluorescent lighting at a lab). R. 117, Pg. ID 728–29; R. 116, Pg. ID 520; R. 118, Pg. ID 842–43. But since the jury convicted, we must resolve conflicting testimony in favor of the government. *United States v. Vasquez*, 560 F.3d 461, 469 (6th Cir. 2009). And a reasonable juror could have chalked the conflict up to differences in lighting, perception, or description. Or the jury might have concluded that the fiber Markham mixed into the drugs lightened their appearance.

Third, Stevens proposes an alternative theory about how fentanyl could've gotten into the drugs that Markham sold Adams: Markham cut the heroin Stevens sold her with fentanyl she received somewhere else. But speculation about other possible theories isn't enough to overturn the jury's verdict, and that's all Stevens can provide here. *See United States v. Sadler*, 24 F.4th 515, 547 (6th Cir. 2022). True, Markham received only 1.5 grams from Stevens, and she used

some and sold some before selling 1.2 grams to Adams. So she would likely have had to mix what she got from Stevens with something else to have enough. But far from disproving the government's theory, that's entirely consistent with it—Markham's Facebook messages from the day before Adams's death say that she added fiber, not fentanyl, into the drugs before reselling them to Adams. The jury was entitled to credit that explanation.

Fourth, Stevens claims that the drugs he sold Markham couldn't have included fentanyl—a more potent drug than heroin—because customers had complained in the past that Stevens's drugs were weak. Yet isolated prior complaints alone don't establish that Stevens never sold fentanyl. Indeed, Markham noted that the potency of the drugs she received from Stevens varied, and that she only received complaints that the drugs were weak some of the time. What's more, these complaints likely came from experienced drug users. Adams had been clean for six months before using the drugs Markham sold him, so he had a low tolerance.

Finally, Stevens contends that if he had really sold Markham the drugs that killed Adams, Markham would've identified him as her source in messages expressing her guilt. But both Stevens and the government asked Markham about that at trial. And she explained that she didn't mention who she got the drugs from because she was simply expressing her remorse for being the person who directly facilitated Adams's death. The jury believed her explanation, so we won't second-guess it. *See Jackson*, 470 F.3d at 309.

In sum, Stevens can't shoulder the heavy burden of proving insufficiency of the evidence. The district court didn't err in denying his motion for judgment of acquittal.

## C.

*Sentencing challenge.* Stevens claims that the district court misapplied Section 2D1.1(a)(1) of the Sentencing Guidelines. Because his challenge is to the district court's interpretation of the

Sentencing Guidelines, we review with fresh eyes. *See United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008).

Section 2D1.1(a)(1) of the Sentencing Guidelines establishes a base offense level of 43 if: (1) the defendant is found guilty of violating (among other statutes) Section 841(b)(1)(C); (2) death resulted from a substance distributed by the defendant; and (3) the defendant was previously convicted of a "similar offense."

It's undisputed that Stevens meets the first two criteria. He was convicted of violating Section 841(b)(1)(C), and, as discussed, there was sufficient evidence for the jury to conclude that Stevens caused the death of another.

So that leaves just the third criterion: a "similar offense." We've previously held that "similar offense" in this context includes a "felony drug offense." *United States v. Johnson*, 706 F.3d 728, 733 (6th Cir. 2013); *see* 21 U.S.C. §§ 802(44), 841(b)(1)(C). And Stevens's prior conviction for possession of crack cocaine was a felony drug offense. Obviously, it involved drugs. And it was a felony because it was punishable by more than a year's imprisonment. *See* Ky. Rev. Stat. §§ 218A.1415, 532.060(2)(d). Thus, the district court properly used that conviction to enhance Stevens's sentence.

Stevens's only counterargument is that *Johnson* is factually distinguishable. And that's true—the predicate offense in *Johnson* was delivery of heroin, whereas here it's possession of crack cocaine. *See Johnson*, 706 F.3d at 729. But the facts in *Johnson* are beside the point. *Johnson* held that "similar offense" in Section 2D1.1(a)(1) means "felony drug offense." *Id.* at 733. That holding binds us.

\* \* \*

We affirm.