**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3091
_____

UNITED STATES OF AMERICA

v.

DAVID B. DARBY,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:21-CR-00081)
U.S. District Judge:  Honorable Christopher C. Conner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 11, 2026

_____

Before:  SHWARTZ, MASCOTT, and McKEE, Circuit Judges.

(Filed: June 24, 2026)
_____

OPINION[*]

_____

_____

   [*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

David B. Darby appeals his convictions and sentence. For the following reasons, we will affirm.

I

From jail calls and wiretap recordings,[1] physical surveillance, controlled purchases, and witnesses, law enforcement confirmed that Darby distributed oxycodone, cocaine, and fentanyl on multiple occasions and made one fentanyl sale that led to the death of a confidential informant, Kayla Bertone. A search of a location affiliated with Darby led to the recovery of two firearms. Based on this evidence, Darby was charged with and convicted of violating federal drug, gun, and money laundering laws.

II

A

Darby first argues that the District Court violated his Sixth Amendment right by seating an out-of-district juror. We disagree.

Criminal defendants are entitled to trial "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Together with the Venue Clause, see U.S. Const. art. III, § 2, cl. 3, this so-called Vicinage Clause governs "jury composition" and "narrows the place where trial is permissible by specifying" where a "jury must be drawn from." Smith v. United States, 599 U.S. 236,

---

[1] Any challenge to the District Court's order denying his motion to suppress the wiretap evidence fails because the wiretap application was supported by probable cause based on, among other things, Darby's recorded jail calls and controlled drug buys. United States v. Tehfe, 722 F.2d 1114, 1118 (3d Cir. 1983).

245 (2023).

During voir dire in open court, a prospective juror informed the District Court that he had recently moved from the Middle District to the Eastern District of Pennsylvania.[2] At sidebar in the presence of counsel,[3] the juror told the Court that he had moved two weeks prior.[4]  No one objected to his serving on the jury.  Thus, Darby's objection to his service was waived.  See United States v. Gonzalez, 949 F.3d 30, 37 (1st Cir. 2020); United States v. Novod, 923 F.2d 970, 978 (2d Cir.), aff'd on reh'g, 927 F.2d 726 (2d Cir. 1991) (determining challenge to juror's residency was waived where defendant "did not object when the juror first identified her county of residence; nor did he do so once he became aware of the actual boundaries of the [judicial district] during the colloquy"); United States v. Haywood, 452 F.2d 1330, 1332 (D.C. Cir. 1971) ("[A] party who fails to object to the service of a juror on grounds of residence . . . should be deemed to have

---

[2] See 28 U.S.C. § 118 (delineating judicial districts of Pennsylvania).

[3] Darby was present in the courtroom when the juror initially explained his residency but was not present during the subsequent conversation at sidebar.  See United States v. Johnson, 677 F.3d 138, 141-42 (3d Cir. 2012) ("[T]he decision to have a criminal defendant present—and in close proximity to individual jurors—during individual voir dire conducted at sidebar is tactical and does not require the defendant's express consent."); see also United States v. Gagnon, 470 U.S. 522, 528 (1985) ("The district court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend.").

[4] After the juror disclosed his new residence, the Court responded: "I think we're okay based on that.  You just need to have lived in our jurisdiction for at least one year prior to your jury service."  App. 672.  Counsel for Darby's co-defendant added that the date of service was counted from the juror's completion of the questionnaire.  These statements likely referred to a requirement under the Jury Selection and Service Act of 1968 ("JSSA"), which bars from jury service anyone who has "not . . . resided for a period of one year within the judicial district."  28 U.S.C. § 1865(b)(1).  Darby does not assert a JSSA violation.

3

waived the objection."). Furthermore, the decision whether to strike a juror is reserved for an attorney's professional judgment. See Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1434 (3d Cir. 1996); see also United States v. Oakes, 680 F.3d 1243, 1249 (10th Cir. 2012) (observing the "widely accepted view that the decision whether to strike a prospective juror during jury selection is one for defense counsel"). Because Darby waived his right to challenge the juror, he is not entitled to relief.

Although the Supreme Court has noted the importance of the Vicinage and Venue Clauses in Smith, 599 U.S. at 245, it has not discussed the application of the Vicinage Clause in the jury selection context, nor has it opined on its waivability. Our case law observes that "[d]espite its basis in the Constitution, venue in the criminal context continues to occupy a lesser station in the hierarchy of constitutionally-derived rights," that it can be waived, and that "the standard for finding a waiver of venue is less rigorous than that for finding a waiver of the rights to trial by jury, to confront one's accusers and to be free from self-incrimination." United States v. Perez, 280 F.3d 318, 328 (3d Cir. 2002); see also United States v. Auernheimer, 748 F.3d 525, 541 n.9 (3d Cir. 2014) (emphasizing importance of venue but holding "[w]e in no way imply that venue cannot be waived by the defendant by failing to object to it in a timely fashion"). In light of the similar role and importance of the Venue and Vicinage Clauses in criminal jury trials, and ours Court's longstanding precedent on waiver of venue, challenges to the Vicinage Clause can be similarly waived here under those principles. See United States v. Sandini, 803 F.2d 123, 127 (3d Cir. 1986) ("[O]bjections to venue are waived if not raised in a timely manner").

4

B[5]

Next, Darby claims that the District Court unduly limited his cross-examination of Alycia Logsdon—who purchased pills from Darby, sold one pill to a friend, and became sick after consuming them—in violation of the Confrontation Clause. The Confrontation Clause entitles a defendant "to be confronted with the witnesses against him," U.S. Const. amend. VI, and that right is vindicated through "the right of cross-examination," Douglas v. Alabama, 380 U.S. 415, 418 (1965).

The District Court did not abuse its discretion in limiting and declining to reopen cross-examination. As the Court observed, Darby's counsel asked Logsdon about her drug transactions with Darby and the charges against her. The District Court's ruling barring counsel from asking about whether she was guilty of the state crimes she faced was within its discretion as probing that topic alone would not shed light on her actions with Darby, which she had already described. See Kentucky v. Stincer, 482 U.S. 730, 739 (1987) ("[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (emphasis omitted) (quoting Delaware v.

---

[5] "[A] court of appeals reviews limitations on cross-examination for an abuse of discretion. . . . If we determine that there was an abuse of discretion, we then must review the error to see if it is harmless." United States v. Lore, 430 F.3d 190, 208 (3d Cir. 2005).

Darby also argues the District Court violated his Due Process rights, but he did not explain how, so we decline to consider this claim further. See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing.").

Fensterer, 474 U.S. 15, 20 (1985))).

C

Again relying on the Confrontation Clause, Darby also argues that the District Court admitted two forms of inadmissible hearsay evidence but his challenge fails.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004), because in that case "the Clause's 'role in protecting the right of cross-examination' is not implicated," Smith v. Arizona, 602 U.S. 779, 785 (2024) (citations omitted).[6] Darby's arguments fail because the challenged statements here were either (1) not introduced for their truth so they are outside of the Confrontation Clause, or (2) did not affect the trial's outcome.

First, Darby challenges testimony about a tip to law enforcement. According to the tip, Sarah Turesky (1) obtained pills from New York while Darby was in jail and sold them at his direction, and (2) kept a journal of her drug transactions. The Government properly presented the tip to explain why law enforcement began investigating Darby. See United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993) (observing "officers generally should be allowed to explain the context in which they act" (citations omitted)).

---

[6] "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." United States v. Hinton, 423 F.3d 355, 360 (3d Cir. 2005). Statements not introduced for their truth are not testimonial and, therefore, not subject to the Confrontation Clause. Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004); Smith v. Arizona, 602 U.S. 779, 792 (2024) ("Smith's confrontation claim can succeed only if [the witness]'s statements came into evidence for their truth.").

While a prosecutor may not rely on such background evidence to prove its case, the Government did not do so here, as it produced evidence proving the conduct described and relied on that evidence—not the tip—in its arguments to the jury. Cf. United States v. Price, 458 F.3d 202, 209-210 (3d Cir. 2006) ("The evidentiary danger posed by police officers' testimony about the contents of reports received in connection with the performance of their duties is greatest when the government does not put on direct evidence of the substance of the reports."). Indeed, by the time the tip was introduced, the jury had already heard: (1) Turesky testify about her and Darby's distribution of drugs acquired in New York, (2) recorded calls between Turesky and Darby discussing the operation, and (3) testimony about Turesky's journal documenting the drug deals. Thus, the District Court did not err in admitting testimony about the tip to explain why law enforcement commenced its investigation. See United States v. Lacerda, 958 F.3d 196, 223 (3d Cir. 2020) ("[S]tatements that are offered merely to show that they happened are not offered for a hearsay purpose.").

Second,[7] Darby argues that an officer's testimony describing Bertone's identification of Darby as her pill supplier, offered without objection, violated the Confrontation Clause. Even assuming admission of this evidence was plain error, it did not affect the outcome of trial, given the overwhelming evidence establishing that Darby did in fact distribute drugs to Bertone, including: (1) testimony that Bertone had been

[7] Because Darby's counsel did not object to this evidence as hearsay at trial, we review for plain error. United States v. Iglesias, 535 F.3d 150, 158 (3d Cir. 2008); United States v. Mussare, 405 F.3d 161, 167 (3d Cir. 2005).

7

arrested with drugs, (2) testimony that officers had observed her arrange several meetings with Darby, (3) testimony from Bertone's mother that she asked Bertone to acquire drugs for her on August 24, 2019, (4) text messages and a phone call from that same day between Bertone and Darby to meet at a location where Darby distributed drugs to others, and (5) testimony that Bertone's mother consumed pills Bertone acquired that day and was later hospitalized for an opioid overdose.

Thus, Darby's Confrontation Clause claims based on the admission of hearsay evidence fail.[8]

D[9]

---

[8] The admission of recorded jail calls and evidence obtained via wiretaps also did not violate the Confrontation Clause. See United States v. Hendricks, 395 F.3d 173, 181 (3d Cir. 2005) ("[S]urreptitiously monitored conversations and statements contained in the Title III recordings are not 'testimonial' for purposes of Crawford."); United States v. Jones, 716 F.3d 851, 856-57 (4th Cir. 2013) (declining to classify jail calls as testimonial because they were not made with the intent or expectation of being used against a co-conspirator).

Furthermore, Darby's assertion that the District Court erred by failing to hold a pre-trial hearing establishing a conspiracy under United States v. James, 590 F.2d 575 (5th Cir. 1979), fails because such a hearing is not required. See United States v. Ammar, 714 F.2d 238, 246 (3d Cir. 1983). In any event, the recordings consisted of Darby's admissions as well as the statements of his co-conspirators, which were made in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

[9] We apply different standards of review for sufficiency of the evidence and weight of the evidence challenges.

> We review a sufficiency challenge de novo. When deciding such a challenge, we apply a particularly deferential standard of review. We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. We do not weigh evidence or determine the credibility of witnesses in making this determination.

United States v. Hendrickson, 949 F.3d 95, 97 n.2 (3d Cir. 2020) (internal citations, alteration, and quotation marks omitted).

Darby claims that some of his convictions were not supported by sufficient evidence and were against its weight. We disagree.

1

With respect to Darby's drug convictions under 21 U.S.C. §§ 846 and 841(a)(1), the Government may prove possession with intent to distribute and distribution of a controlled substance, and conspiracy to do so, using circumstantial evidence. United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002). Scientific evidence need not establish the drug's identity "[s]o long as the [G]overnment produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt." Griffin v. Spratt, 969 F.2d 16, 22 n.2 (3d Cir. 1992) (internal quotations omitted).

As to the conspiracy and distribution of cocaine convictions, sufficient evidence from, among things, phone calls between Darby and co-conspirators as well as law enforcement testimony confirmed that Darby conspired to distribute and distributed cocaine.[10]

---

"A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted). In assessing a motion for a new trial based on the weight of the evidence, a court does "not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014) (internal quotation marks omitted). We review an order denying a new trial under these circumstances for abuse of discretion. Id.

We have considered the applicable standard for each challenge.

[10] This evidence included: (1) phone calls between Darby and Bonds, from August

The evidence also established that Darby distributed and agreed to distribute fentanyl to multiple individuals at various times including August 24, 2019, and caused the overdoses resulting in Bertone's death and her mother's serious injury. Although Darby argues that Bertone could have obtained fentanyl from another source, we will not disturb "the jury's conclusion simply because another inference is possible—or even equally plausible," as that "is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges." United States v. Caraballo-Rodriguez, 726 F.3d 418, 432 (3d Cir. 2013) (en banc). The evidence was sufficient to prove that Darby conspired to and distributed fentanyl resulting in serious bodily injury and death.[11]

2

_____

17 and 21, 2019, discussing the distribution of "hard" and "soft"—slang terms for crack and powder cocaine—for $200, App. 766-67; Gov. Exs. 73-74, (2) officer testimony that he observed Darby visit Bonds's home on August 21, 2019, and then leave to meet an unidentified individual in a parking lot, (3) a phone call made shortly thereafter in which Darby told Bonds he was upset because the buyer only did "soft," indicating the deal was unsuccessful because the buyer wanted crack, rather than powder, cocaine, Gov. Ex. 75, and (4) a later call where Darby told Turesky the meeting "wasn't a complete waste," conveying that some of the drugs were accepted. Gov. Ex. 76.

[11] This evidence included (1) Redden's testimony that she met Darby on August 24, 2019, to give him the pills for distribution, (2) text messages and a phone call between Darby and various individuals—including Bertone, whose mother had recently asked her to purchase pills—arranging to meet that day, (3) officers' testimony that the actions they observed were consistent with drug deals, (4) testimony that multiple people, including Logsdon and Malik Bonds's wife, consumed pills from Darby that day and then became sick with Bertone's mother requiring hospitalization for an opioid overdose, and (5) testimony that Bertone's body was discovered days later, and her autopsy revealed she had ingested a lethal amount of fentanyl. Bertone's autopsy revealed that she had recently ingested other substances, including oxycodone, but the jury heard sufficient evidence from a coroner and a forensic toxicologist to conclude that Bertone consumed a lethal amount of fentanyl, and sufficient evidence would permit a rational juror to conclude that Darby provided that fentanyl.

10

The evidence also supports Darby's conviction under 18 U.S.C. § 924(c)(1)(A). To prove this crime, the Government must show "that possession of the firearm advanced or helped forward a drug trafficking crime." United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004), as amended (Aug. 3, 2004). In making this determination, courts consider, among other things:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (citations omitted); see also United States v. Perrin, 149 F.4th 267, 281 (3d Cir. 2025) (applying Sparrow factors). Considering these factors, we conclude the evidence presented at trial supports Darby's § 924(c) conviction. This evidence shows that: (1) agents recovered .22 and .25 caliber handguns in a box with Darby's other belongings from Turesky's home where Darby was staying, see Sparrow, 371 F.3d at 853 ("While the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction."), (2) while incarcerated, Darby instructed Turesky to carry the firearms with her when selling drugs after buyers had refused to pay and their stash had been robbed, and (3) at least one of the firearms was operable because Turesky testified that Darby had shot himself in the hand,

11

and an officer observed his gunshot wound.[12, 13]

3

The evidence also supports the money laundering charge under 18 U.S.C. § 1956(a)(1)(A)(i). To prove a violation of this statute, the Government must show: "(1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . an intent to promote the carrying on of specified unlawful activity." United States v. Omoruyi, 260 F.3d 291, 294 (3d Cir. 2001).

Although Darby argues that his transactions had innocent explanations, "[t]here is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." Caraballo-Rodriguez, 726 F.3d at 430-31 (internal quotations omitted and alterations in

---

[12] Darby also argues that his conviction under 18 U.S.C. § 922(g)(1) violates the Second Amendment and the Commerce Clause. He concedes that both arguments are foreclosed by our precedent. First, Darby was on state probation when he possessed a weapon and the Second Amendment permits disarming those still serving criminal sentences, so Darby's Second Amendment argument necessarily fails. See United States v. Quailes, 126 F.4th 215, 221-22 (3d Cir.), cert. denied, 146 S. Ct. 127 (2025); see also United States v. Moore, 111 F.4th 266, 273 (3d Cir. 2024), cert. denied, 145 S. Ct. 2849 (2025) ("A convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm."). Second, the parties stipulated that both firearms traveled in interstate commerce, foreclosing Darby's Commerce Clause argument. See United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001).

[13] In his reply brief, Darby argues that the Government "seeks affirmance by constructive amendment" because the indictment charged Darby as possessing firearms on or about November 12, 2018, until September 27, 2019, but the Government relies on jail calls that occurred before this period, Gov. Exs. 18-19, and when Darby was incarcerated so not in possession of these firearms, Gov. Ex. 27. We need not consider this argument because it was raised for the first time in a reply brief. See United States v. Boggi, 74 F.3d 470, 478 (3d Cir. 1996) (citations omitted)).

original); see also United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990) ("To sustain the jury's verdict, the evidence 'does not need to be inconsistent with every conclusion save that of guilt.'" (citations omitted)). Thus, the jury had sufficient evidence to convict Darby of money laundering in violation of § 1956(a)(1)(A)(i).[14]

* * * *

In sum, sufficient evidence supported each of Darby's challenged convictions and, based on consideration of the full record, the jury's findings were not against the weight of the evidence.[15]

E

Darby's claims of sentencing error also lack merit.[16]

First, the District Court did not err in applying the 2023 Sentencing Guidelines Manual, which was in effect at the time of Darby's sentencing, rather than the 2018 version, which was in effect at the time of the crimes. Moreover, application of the 2018

---

[14] Turesky's testimony and the recorded calls established that Darby purchased pills from sources in New York on credit, sold them in Pennsylvania, and then transferred the money he owed back to those sources all in furtherance of his illegal activity. On this last point, the Government introduced Western Union transaction records showing Darby sending funds to his New York drug suppliers. Some of these transfers occurred close in time to Darby's drug sales. For example, Bertone engaged in controlled buys on March 27 and June 2, 2019, Darby transferred money to his New York suppliers as identified by Turesky and her journal on March 27 and June 4, 2019.

[15] Because we conclude the District Court did not err at trial, there is no cumulative error. United States v. Greenspan, 923 F.3d 138, 154 (3d Cir. 2019).

[16] Because Darby raised these challenges before the District Court, we review "[f]actual findings relevant to the Sentencing Guidelines . . . for clear error, and the District Court's Guidelines interpretation . . . de novo. . . . The District Court's application of the Guidelines is reviewed for abuse of discretion." United States v. Seibert, 971 F.3d 396, 399 (3d Cir. 2020), as clarified, 991 F.3d 1313 (3d Cir. 2021). (citations omitted).

13

version would not have resulted in a different—let alone more favorable—sentence under U.S.S.G. § 2D1.1. See United States v. Lennon, 372 F.3d 535, 539 (3d Cir. 2004) (stating an Ex Post Facto Clause violation occurs if the court fails to use the version of the Sentencing Guidelines in effect at the time of the crime where that version is "more favorable" to the defendant). Under the 2023 Guidelines, a defendant's base offense level is forty-three if he was convicted of 21 U.S.C. § 841(b)(1)(C) "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a felony drug offense." U.S.S.G. § 2D1.1(a)(1)(B) (2023). The 2018 Guidelines imposed the same base offense level if the § 841(b)(1)(C) "conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense." U.S.S.G. § 2D1.1(a)(1) (2018). The difference between the two sections is that the 2023 version references prior convictions for "felony drug offense[s]" while the 2018 version used the language "similar offense[s]."[17]

Darby argues "felony drug offense" and "similar offense" mean different things and applying "similar offense" would result in a more lenient sentence. He is incorrect. Under the 2023 Guidelines, a "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . .

---

[17] The language change reflects updates to the Sentencing Guidelines as a result of the First Step Act. See U.S. Sentencing Comm'n, Amendment 817, https://www.ussc.gov/guidelines/amendment/817 (effective Nov. 1, 2023).

that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (cited in U.S.S.G. § 2D1.1 cmt. n.1).[18] Under the 2018 Guidelines, a defendant must have been convicted of a "similar offense" to § 841(b)(1)(C), which, in context, refers to a crime that imposes a term of imprisonment longer than one year for, among other things, conduct relating to drug distribution. Because this change in terminology did not alter the meaning of the provision, we join our sister courts who have treated "felony drug offense" and "similar offense" equivalently and hold the application of the 2023 Guidelines was not error. See United States v. Johnson, 706 F.3d 728, 731 (6th Cir. 2013) (recognizing parallel meanings between "similar offense" under U.S.S.G. § 2D1.1(a)(1) and "felony drug offense" under 21 U.S.C. § 841(b)(1)(C) because both imposed terms of life imprisonment); United States v. Fisher, 683 F. App'x 214, 215 (4th Cir. 2017) (relying on Johnson's holding that "similar offense is synonymous with 'felony drug offense'").

Second, the District Court correctly applied the "career offender" enhancement under U.S.S.G. § 4B1.1. To trigger this designation, the defendant's instant conviction must be for, among other things, a controlled substance offense, and he must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Darby's instant convictions are for controlled substances offenses, and he has prior state convictions for: (1) possession with intent to deliver

---

[18] No party challenges the reliance on U.S.S.G. § 2D1.1 cmt. n.1 to ascertain the definition of "felony drug offense," so we do not engage in further analysis under United States v. Nasir, 17 F.4th 459, 471 (3d Cir. 2021) (en banc). See United States v. Wise, 134 F.4th 745, 748 (3d Cir. 2025).

15

marijuana under 35 Pa. C.S. § 780-113(a)(30), (2) aggravated assault under 18 Pa. C.S. § 2702(a)(6), and (3) robbery in the third degree under 18 Pa. C.S. § 3701(a)(1)(v). Darby is a career offender because these state crimes constitute qualifying offenses under U.S.S.G. § 4B1.1(a). See United States v. Dawson, 32 F.4th 254, 267 (3d Cir. 2022) (determining 35 Pa. C.S. § 780-113(a)(30) conviction to be a career offender predicate);[19] United States v. Hurtt, 105 F.4th 520, 524-25 (3d Cir. 2024) (concluding the same as to an aggravated assault conviction under 18 Pa. C.S. § 2702(a)(6)); U.S.S.G. § 4B1.2(a)(2) (listing robbery as an enumerated crime of violence).

Third, the District Court appropriately applied a four-level enhancement under U.S.S.G. § 3B1.1(a) because Darby "was an organizer or leader of a criminal activity that involved five or more participants." An "organizer" is "a person who generates a coherent functional structure for coordinated criminal activity," and a "leader" is "a person with high-level directive power or influence over criminal activity." United States v. Adair, 38 F.4th 341, 354 (3d Cir. 2022). An organizer or leader need only control the activities of one individual in the conspiracy. United States v. Fountain, 792 F.3d 310, 321 (3d Cir. 2015) ("[T]he evidence must show that [the defendant] exercised some degree of control over at least one other person involved in the offense."). Here, the evidence establishes that Darby was involved in a conspiracy with at least six other

---

[19] Darby conceded that the definition of marijuana under 35 Pa. C.S. § 780-113(a)(30) is not broader than the federal definition. United States v. Lewis, 58 F.4th 764, 773 (3d Cir. 2023). Darby argues only that the conduct criminalized by 35 Pa. C.S. § 780-113(a)(30) was broader than under federal law—this argument fails under United States v. Dawson, 32 F.4th 254, 267 (3d Cir. 2022).

individuals and directed Turesky's distributions and instructed her to carry firearms in doing so.  Thus, the District Court correctly applied the enhancement under U.S.S.G. § 3B1.1(a).

III

For the foregoing reasons, we will affirm.